SHEDD, Circuit Judge,
dissenting:
The district court dismissed the 170-page First Amended Consolidated Class Action Complaint (“Complaint”) of Teachers’ Retirement System of Louisiana (“TRSL”), which named as defendants Cree, Inc. and several of its managers (collectively, “Cree”) in a complicated securities fraud action, holding that the Complaint failed to plead facts sufficient to support a cause of action under § 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5. In reaching its conclusion, the district court interpreted and applied the Private Securities Litigation Reform Act of 1995 (“PSLRA”), Pub.L. No. 104- *190 67, 109 Stat. 737. In my view, the factual allegations in the Complaint satisfy the heightened pleading requirements of the PSLRA as well as the ordinary pleading requirements that apply to any action for fraud, as provided in Rules 8 and 9 of the Federal Rules of Civil Procedure. Accordingly, I would reverse the decision of the district court and remand this case for further proceedings consistent with this opinion.
I
We review de novo the decision of the district court to grant a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir.2006). A court should grant a Rule 12(b)(6) motion only if “after accepting all well-pleaded allegations in the plaintiffs complaint as true and drawing all reasonable factual inferences from those facts in the plaintiffs favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief.” Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir.1999).[1]
Generally speaking, the majority opinion correctly summarizes the law of securities fraud. To plead a prima facie case, one must allege: (1) a false statement or omission of material fact by the defendant, (2) scienter, (3) reasonable reliance by the plaintiff, and (4) loss causation. Hillson Partners L.P. v. Adage, Inc., 42 F.3d 204, 208 (4th Cix.1994). However, in contrast to an ordinary action for fraud, a securities fraud action must meet the heightened standards imposed by the PSLRA when pleading the first two of these four elements. 15 U.S.C. § 78u-4(a)(l). When pleading the final two elements of securities fraud, a plaintiff must simply satisfy the generally applicable requirements of Rules 8 and 9 of the Federal Rules of Civil Procedure.
As the majority notes, the district court dismissed the Complaint for three reasons: (1) failure to plead with particularity all facts giving rise to the belief that a false statement or omission of material fact occurred, (2) failure to plead with particularity facts giving rise to a strong inference of scienter, and (3) failure to adequately plead loss causation.[2] The majority approach to testing the adequacy of the Complaint examines in isolation each individual suspect transaction in order to ascertain whether the elements of securities fraud have been adequately pled with respect to each one.[3] However, this approach ignores the fact that this case revolves around a single securities fraud action against a single company, Cree.
Therefore, the Complaint does not — and need not — allege an action for securities fraud with respect to all six companies with which Cree dealt. Instead, the Complaint alleges a single cause of action for securities fraud, as evidenced by many transactions with multiple companies. If *191 even one of these transactions is pled adequately enough to meet the pleading requirements under the PSLRA and Rules 8 and 9, the cause of action must survive the motion to dismiss. Moreover, if the totality of Cree’s actions reveals a larger picture of fraud sufficient to meet the necessary pleading requirements, this case must advance beyond the current stage of the proceedings. In my opinion, the C & C transactions alone, especially when viewed in conjunction with the numerous other transactions as a whole, permit a reasonable inference of fraud that requires denial of Cree’s motion to dismiss.
II
A.
To plead a material misrepresentation or omission of material fact under the PSLRA, a complaint must “specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.” 15 U.S.C. § 78u-4(b)(1). TRSL has alleged a multitude of misleading statements by Cree. The Complaint plainly specifies each of these statements under the heading, “Defendants’ False and Misleading Statements During the Class Period.” J.A. 1007. The statements include 23 SEC filings, 22 press releases, two conference calls, and one news article. Therefore, the Complaint clearly meets the first prong of this element by specifying each statement believed to be misleading.
Further, the Complaint gives adequate reasons why each of the statements is misleading. TRSL has alleged that Cree was involved in numerous activities to inflate its revenue artificially. These fraudulent schemes, known as “channel stuffing” and “round-tripping,” involved a series of sham deals in which Cree, in collusion with insiders at other companies, would exchange goods or services subject to either secret rights of return or secret agreements that excused Cree’s non-performance.[4] Cree included or referenced the favorable portions of these agreements in its SEC filings, press releases, conference calls, and the news article. However, the secret portions of the agreements, which rendered the agreements futile, were, of course, omitted. Thus, Cree’s public representations about these agreements were misleading because they made material omissions— i.e., the secret “handshake” deals that vitiated any substance the contracts otherwise appeared to retain.[5]
Finally, it is important to note that all of TRSL’s allegations regarding Cree and its *192 transactions are made on information and belief; thus, I agree with the majority that the Complaint must state at least “sufficient facts to support a reasonable belief in the allegation” that the material omissions were misleading. Maj. Op. 174. TRSL has alleged sufficient facts to support such a reasonable belief by basing many of its allegations on information obtained from a lawsuit filed by Eric Hunter, one of Cree’s co-founders. The day before the class period closed, Eric Hunter filed suit against Cree, alleging, inter alia, securities fraud. In his complaint, Eric Hunter alleged that Cree had engaged “in a series of undisclosed corporate activities, including but not limited to” the following: (1) Cree’s public filings omitted material facts in connection with stock offerings and (2) Cree entered into an undisclosed requirements contract with C & C that amounted to channel stuffing and round-tripping.[6] J.A. 672. Eric Hunter is the brother of Neal Hunter, Cree’s chairman during the class period. Eric Hunter is also the brother of Jeff Hunter, C & C’s chairman during the class period. In addition to being a co-founder of Cree, Eric Hunter was Cree’s CEO until 1994, and during the class period, he was a paid consultant for Cree.[7] Eric Hunter’s statements and his close professional and familial relationship to the allegedly fraudulent actors certainly support a reasonable belief that the omissions in Cree’s public statements were misleading.
Though Eric Hunter’s allegations alone would likely suffice to satisfy the particularity requirements that the PSLRA imposes on allegations made under information and belief, TRSL identifies numerous other sources who attest to the fraudulent, secret agreements between Cree and other companies. The majority refers to these individuals as “confidential sources.” Maj. Op. 174.[8] In addressing these confidential sources, the majority adopts the analysis of the Seventh Circuit in Makor Issues & Rights, Ltd. v. Tellabs, Inc., 437 F.3d 588, 595 (7th Cir.2006). The Tellabs court held that a complaint which relies on confidential sources must allege facts sufficient “ ‘to support the probability that a person in the position occupied by the source would possess the information alleged.’ ” Id. at 596 (quoting Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir.2000)).
*193 I would resolve the issues surrounding unnamed sources differently because the approach adopted by the majority does not inhere in the plain language of the PSLRA. The plain language of the PSLRA does not subject unnamed sources to higher scrutiny than other averments made upon information and belief. Accordingly, in my view, a complaint must simply identify unnamed sources “with particularity,” as required by the plain language of the PSLRA, which might include the source’s job title and years of employment, or possibly, other facts sufficient to support a reasonable belief that the plaintiff did not merely invent sources. The purpose of the PSLRA’s particularity requirement is to prevent the fabrication of information, not to weigh its reliability or credibility.[9] For example, a personal aide or administrative assistant to the CEO could plausibly overhear a pertinent piece of information that may later form the basis for a securities fraud action, notwithstanding his job title. Accordingly, I believe that both Eric Hunter and the numerous unnamed sources listed in the Complaint provide sufficient particularity to form a reasonable basis for believing that the disclosed contracts made materially misleading omissions.
B.
To plead adequately the scienter element of a securities fraud action, a complaint must allege “with particularity facts giving rise to a strong inference that the defendant acted with” scienter. 15 U.S.C. § 78u-4(b)(2). We have noted that scien-ter may be pled by allegations that amount to severe recklessness. Ottmann v. Hanger Orthopedic Group, Inc., 353 F.3d 338, 344 (4th Cir.2003). In Ottmann, we rejected a categorical approach that would require a pleading to allege motive and opportunity in order to satisfy the heightened scienter pleading standards under the PSLRA. Id. at 345. Instead, we adopted a case-specific approach, which requires courts to “examine all of the allegations in each case to determine whether they collectively establish a strong inference of scienter.” Id.
Based on a reading of the Complaint as a whole, I believe it adequately pleads scienter. Assuming the truth of the material misrepresentation allegations, the individuals named as defendants certainly would have known about the secret agreements between Cree and various other companies. Aside from the personal wealth that Cree management allegedly gained from the channel stuffing and round-tripping agreements,[10] the mere fact that individual executives and directors were the people actively entering into fraudulent agreements to inflate Cree’s revenues supports a strong inference of scienter. The material omissions from Cree’s public statements could not have occurred without the agents of the company knowingly facilitating the fraudulent transactions. Accordingly, a strong infer *194 ence of scienter is supported under the facts alleged in the Complaint as a whole.
C.
Finally, the Complaint must adequately allege loss causation, which is not subject to any heightened pleading requirement under the PSLRA. I agree with the majority that the Supreme Court in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), expressly refused to decide whether loss causation must meet the ordinary pleading requirements of Rule 8 or the heightened pleading requirements for fraud under Rule 9. Instead, the Court “assumefd], at least for argument’s sake,” that the ordinary requirements of Rule 8 applied. Id. at 346, 125 S.Ct. 1627. Following the example of the Court in Brou-do, I analyze the allegations of loss causation in the Complaint under the ordinary Rule 8 “short and plain statement” requirement.
The Complaint alleges loss causation by referencing the precipitous decline in stock value upon the filing of Eric Hunter’s lawsuit against Cree. Though Eric Hunter’s complaint specifically referenced only the secret agreements with C & C, it clearly stated that Cree had engaged in a “series of undisclosed ... violation[s] of the federal securities ... laws, including but not limited to” the agreements with C & C. J.A. 672. Eric Hunter’s complaint contradicted, or at least called into question, Cree’s prior denials of round-tripping. When the information in Eric Hunter’s complaint became public knowledge, Cree’s stock price dropped by nearly 20%. Under the normal pleading standards of Rule 8, a reasonable inference of loss causation plainly exists under these facts. I simply cannot envision a more direct and proximate causal link than an insider’s disclosure of fraud that causes a sudden and severe drop in stock price.[11] These facts, which are assumed to be true for purposes of my review, plainly give rise to a reasonable inference of loss causation.
Ill
Accordingly, I would reverse the district court and remand for further proceedings.[12]

.With the exception of requiring a strong inference of scienter, the PSLRA does not change our normal standard of review for a 12(b)(6) motion. For the most part, the PSLRA simply modifies the quantum of information that must be included in a complaint. Accordingly, for purposes of my analysis, I assume the truth of all well-pleaded allegations in the Complaint, and I draw all reasonable factual inferences in favor of TRSL.

. This is a fraud-on-the-market case; thus, investor reliance upon publicized market prices is presumed. Basic, Inc. v. Levinson, 485 U.S. 224, 246-47, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

. This approach is substantially the same as the one employed by the district court, which, like the majority, divided its opinion into sections titled according to the companies that Cree dealt with: i.e., C & C, Microvision, Spectrian, WTI, Xemod, and Lighthouse.

. An example is Cree’s alleged channel stuffing agreement with C & C. C & C would “purchase” silicon carbide crystals from Cree, subject to a secret right of return. C & C would then exercise its secret right of return and "reject” shipments of crystals. However, instead of actually returning the crystals to Cree, C & C would store the crystals at its facilities, thereby allowing Cree to avoid accounting for reserves or charges for its returned products. Thus, this agreement allowed Cree to create the appearance of permanent sales and profits that were, in fact, illusory. Cree allegedly entered into similarly illusory “exchanges” with Microvision, Spect-rian, and others.

. Both the district court and the majority seem to miss the crux of TRSL's argument on this point. Simply because a contract is publicly disclosed and appears to be legitimate does not prevent it from being materially misleading. The secret agreements between Cree and the other companies caused the publicly disclosed contracts to appear to be something that they were not. These omissions are what rendered the public statements materially misleading.

. Though Eric Hunter's complaint never used the words “channel stuffing” or "round-tripping,” it alleged facts sufficient to reasonably infer such schemes.

. The fact that Eric Hunter performed no work in his capacity as a consultant only underscores the continuation of his “insider” status with Cree, despite the fact that he was no longer an executive in the company. Only someone with close personal ties to a corporation would receive a salary in exchange for no substantial work.

. I question if the characterization as "confidential” is particularly useful in this context, where the sources are readily discernable by Cree. These sources are confidential only in that they are not specifically named; however, TRSL identified them by title and the years they were employed by various companies. Though their names do not appear in the Complaint, a modest inquiry by Cree would likely establish who they are. These so-called confidential sources cited by TRSL are numerous, and they certainly provide sufficient facts to form a reasonable belief that Cree's public statements were misleading.
For example, TRSL identifies a former Cree process engineer employed during the class period; this source learned from a top manager at Cree that a secret deal existed between Cree and C & C, which required C & C to accept shipments of crystals far in excess of its needs. TRSL also reveals a former C & C director and vice president of marketing, who claimed that C & C was simply “feeding Cree” and spending money like “drunken sailors” because of the close familial relationship between the directors of Cree and C & C. Many more examples of such unnamed sources are presented in the Complaint.

. Like the district court, the majority weighs the credibility of various unnamed sources and discredits them because their recollections conflict with publicly available information. However, assessing a 12(b)(6) motion requires that we refrain from weighing evidence and assume all facts in favor of the plaintiff. This is particularly relevant in the current case, where the crux of TRSL's claim is that Cree falsified publicly available information.

. I do not rely on the timing or substance of stock trades in finding a strong inference of scienter. Rather, scienter may be directly shown by the nature of the fraudulent acts at issue here- — intentionally omitting salient details from otherwise publicly disclosed contracts.

. I note that this case is distinguishable from Dura because the corrective disclosure in Dura was much more tenuously connected to the allegations made in Broudo’s complaint. The corrective disclosure in Dura — a company press release — simply stated that earnings would be diminished because of reduced drug sales. Id. at 339, 125 S.Ct. 1627. However, the primary misrepresentations that Broudo allegedly relied upon related to the pending approval of an asthmatic spray device by the Federal Drug Administration. To the contrary, in the case before us, the corrective disclosure was a lawsuit filed by an insider that revealed secret fraudulent agreements; the misrepresentations that TRSL relied upon were public disclosures that failed to mention these secret agreements. Thus, compared to Dura, this case has a much closer nexus between the corrective disclosure and the misrepresentations relied upon by TRSL.

. Because the district court disposed of TRSL's other claims based on its dismissal of the securities fraud claim, I would remand for further proceedings on these claims as well.