Andrew CHIEN, Plaintiff,

v.

SKYSTAR BIO PHARMACEUTICAL CO. et al., Defendants.

No. 3:07CV781 (MRK).

United States District Court,
D. Connecticut.

July 17, 2008.

Andrew Chien, New Haven, CT, pro se.

Jody M. Borrelli, Richardson & Patel, LLP, Los Angeles, CA, Timothy M. Herring, Cummings & Lockwood, Stamford, CT, for Defendants.

### RULING AND ORDER

MARK R. KRAVITZ, District Judge.

In this action, Plaintiff Andrew Chien sues Defendants Skystar Bio Pharmaceutical Company ("Skystar"), Scott Cramer, Steve Lowe and David Wassung (collectively, the "Defendants") for securities fraud in connection with a 2005 reverse merger between Cyber Group Network Corporation ("CGPN") and Skystar. Defendants have moved to dismiss Mr. Chien's Amended Complaint [doc. # 35] on the basis of Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4 ("PSLRA"). *See* Defendants' Motion to Dismiss Amended Complaint [doc. # 39]. Because Mr. Chien has failed adequately to allege

either fraud or loss causation, the Court grants Defendants' motion and dismisses this case.

## I.

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 591–92 (2d Cir.2007) (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir.2002)). Furthermore, on a Rule 12(b)(6) motion, "[a] complaint is deemed to include any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are integral to the complaint." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir.2004) (citations and quotations omitted). A document is integral to the complaint "where the complaint relies heavily upon its terms and effect...." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir.2002) (quotations omitted); *see Collier v. Aksys, Ltd.*, No. 3:04cv1232(MRK), 2005 WL 1949868, at *1 (D.Conn. Aug. 15, 2005). As the Second Circuit stated in *Chambers*, "a plaintiff's reliance on the terms and effect of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original); *see also Beary v. ING Life Ins. And Annuity Co.*, 520 F.Supp.2d 356, 359 (D.Conn.2007). Finally, and as is relevant to the present case, a court considering a motion to dismiss may look at public stock prices as well as "public disclosure documents required by law to be, and that have been, filed with the [Securities and Exchange Commission ("SEC")]." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000) (citations omitted); *see also Blue Tree Hotels Inv. (Canada), Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir.2004) (A court "may also look to public records ... in deciding a motion to dismiss."); *Malin v. XL Capital Ltd.*, 499 F.Supp.2d 117, 128 (D.Conn.2007).

At oral argument, the parties agreed that on the Motion to Dismiss the Court could take judicial notice of stock quotations and disclosure documents filed with the SEC, without transforming Defendants' Motion to Dismiss into a Motion for Summary Judgment. *See* Request for Judicial Notice [doc. # 25]. Accordingly, the following facts are taken from the Amended Complaint, SEC disclosure documents, and stock quotations.

## A.

On September 20, 2005, CGPN issued a press release announcing that it had entered into an agreement to acquire Skystar in a reverse merger through the issuance of common stock.[1] Four business days later, on September 26, 2005, CGPN timely filed a Form 8–K with the SEC, which attached the full text of the Share Exchange Agreement between CGPN and Skystar. Among other things, the Share Exchange Agreement stated that at the closing, CGPN's authorized and issued common stock would total 500,000,000

---

1. Mr. Chien did not mention the September 20 Press Release in his Amended Complaint. He first brought it to the Court's attention in his sur-reply, along with many other additional facts not found in the Amended Complaint. *See* Plaintiff's Sur–Reply to Defendants' Reply to Plaintiff's Mem. In Opposition to Mot. To Dismiss [doc. # 56] at 1. The Court does not rest its decision on the September 20 Press Release, but merely cites it here in order to provide a complete account of the facts.

shares and that CGPN would have no material liabilities. The Share Exchange Agreement also stated that as of the date of the closing, Messrs. Cramer, Lowe and Wassung would "hold an amount of shares of CGPN common stock which represents at least a majority of the issued and outstanding capital stock of CGPN." *See* Request for Judicial Notice [doc. # 25], Ex. A, §§ 4.2, 4.9, 7.1(b).

Before the closing of the merger, CGPN had only 177,188,665 shares of common stock issued and outstanding (though its authorized shares of common stock totaled 500,000,000). *See* Amended Compl. [doc. # 35] at 9–10, ¶ 13. The company had assets of only $1,137 and liabilities of over $1.5 million, approximately $1 million of which was owed to Messrs. Cramer, Lowe and Wassung, the company's officers. CGPN Form 10Q, Dec. 1, 2005, at 2, *available at* http://www.sec.gov/Archives/edgar/data/1076939/00011442040503 8556/v030582_10qsb.htm.[2]

The closing of the reverse merger occurred on November 7, 2005, at which time CGPN issued approximately 316, 461,335 shares of common stock to Messrs. Cramer, Lowe and Wassung, in payment of the debts owed those individuals. CGPN timely filed a Form 8–K dated November 14, 2005 that disclosed that the merger had taken place and also set forth the precise number of shares of common stock issued to Messrs. Cramer, Lowe and Wassung in return for cancellation of debt owed those individuals. See Request for Judicial Notice [doc. # 25], Ex. B at 30. As a result of the issuance of these shares, Messrs. Cramer, Lowe and Wassung held 72% of CGPN's common stock on the date of the closing. As recited in the Share

Exchange Agreement, as of the closing, CGPN had 500,000,000 shares outstanding. *Id.* at 37.

On January 23, 2006, CGPN, now Skystar, filed a Form 14f–1 with the SEC, which stated that Messrs. Cramer, Lowe and Wassung had failed to file their Forms 3, 4 and 5 with the SEC. Specifically, the company stated, "[b]ased solely on the company review of these reports or written representations from certain reporting persons, during the year ended December 31, 2004, and during the current fiscal year, the Company believes that all filing requirements applicable to the Company's officers and directors subject to Section 16(a) of the Exchange Act were met, except that directors R. Scott Cramer, Steve Lowe and former director David Wassung were not able to file their Form 3 within 10 days after he was elected or appointed an officer and/or director of the Company nor were Cramer, Lowe and Wassung able to file Form 4's or Form 5's in connection with transactions that occurred in the last fiscal year and/or in the current fiscal year." *See* Amended Compl. [doc. # 35] at 6–7, ¶ 2. CGPN, now Skystar, also filed a Form 10–K with the SEC on or about April 17, 2006. That report stated as follows:

> On November 7, 2005, the Company issued 201,849,516 (pre 1–for–397 Reverse Split) shares of common stock valued at approximately $0.0025 per share (the average price over the last 90 trading days prior to September 1, 2005, the date on which the Board authorized the issuances for amounts owed to Mr. Cramer, Mr. Lowe and Mr. Wassung) to its former Chief Executive Officer and current Director, R. Scott Cramer as payment

---

2. Although the Form 10Q was filed on December 1, 2005, its disclosures were for the quarter ending on September 30, 2005. Thus, the Form 10Q provides information about the company that was accurate on the date it entered into the reverse merger agreement with Skystar. Mr. Chien relies on the Form 10Q in his Amended Complaint.

for accrued salary and expenses owed to him in the amount of $573,270. On November 30, 2005, the Company also issued 68,100,454 (pre 1–for–397 Reverse Split) shares of common stock valued at approximately $0.0025 per share to its former officer and current Director, Steve Lowe as payment for accrued salary and expenses owed to him in the amount of $195,954. On November 7, 2005, the Company also issued 46,511,-365 (pre 1–for–397 Reverse Split) shares of common stock valued at approximately $0.0025 per share to its former Director, David Wassung, as payment for accrued salary and expenses in the amount of $133,833.

*Id.* at 7–8, ¶ 4.

In his Amended Complaint, Mr. Chien alleges that he purchased 6,391,700 shares of CGPN common stock beginning in "approximately the end of September 2005 to November 4, 2005." *See* Amended Compl. [doc. # 35] at 8, ¶ 5. He claims that he was defrauded because he did not know that CGPN's issued and outstanding shares, which he believed totaled only 177,-188,665, would be "significantly diluted" in connection with the reverse merger. *Id.* at 7, ¶ 3. According to Mr. Chien, "after November 7, 2005, there were 500,000,000 shares [issued and outstanding, and] . . . [t]he issued new common stock severely diluted the share's value, and caused the stock price to drop by 65%." *Id.* at 8, ¶ 5. He alleges that this "dilution was not reported on any filed SEC Filings despite filings being made," *id.* at 22, ¶ 46, and that "Defendants also gave no advance notice to the Plaintiff or to any other shareholders of the merger or of the dilution by issue of additional shares," *id.* at 22, ¶ 49. According to Mr. Chien, "in reli-

ance on the misrepresentations of the Defendants [he] purchased 6,391,700 shares of common stock, which he thought would be valuable because the company misrepresented the amount of common shares as 177,188,665." *Id.* at 23, ¶ 50.

**B.**

Mr. Chien filed this lawsuit on May 17, 2007, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5. *See* Complaint [doc. # 1]. Promptly thereafter Defendants moved to dismiss the Complaint under Rules 12(b)(6) and 9(b) and the PSLRA. *See* Defendants' Motion to Dismiss [doc. # 23].[3]

In accordance with the Court's usual practice, the Court held an on-the-record telephonic conference with counsel for the parties and asked Mr. Chien's counsel if he would like to amend the complaint to address the alleged defects raised in Defendants' Motion to Dismiss. As the Court explained, "It's been my practice to, before briefing begins, see if the plaintiff would like to file, take one last chance to plead, to amend the pleadings to address any of the claims made in the motion to dismiss." Transcript of Nov. 29, 2007 Conference at 2:23–3:1, Defendants' Mem. of Law in Support of Renewed Mot. To Dismiss Amended Complaint For Failure to State a Claim Pursuant to FRCP 12(b)(6) [doc. # 41] ("Mem. In Support of Renewed Mot. To Dismiss"), Ex. A. The Court further stated:

And the reason I do that is the Second Circuit really urges courts, if they're going to dismiss a claim for failure to state a claim, to give the parties a chance to amend, but to me, it doesn't

---

**3.** Defendants Skystar, Cramer and Lowe also moved to dismiss the complaint under Rule 12(b)(2) for lack of personal jurisdiction.

That motion was also denied without prejudice to renewal following the Court's ruling on the Rule 12(b)(6) motion.

make any sense for me to decide the motion first and then offer a chance to amend. It makes more sense to offer the chance to amend before I decide the motions, and the have the plaintiff put forth whatever additional allegations they feel they can and should make, consistent with their obligations under Rule 11.

[T]he motion [to dismiss] claims that you have not pled claims with sufficient particularity as required by 9(b) and the PSLRA, and before I decide that motion, I wanted to know if you wanted the opportunity to try to address any of those concerns.

*Id.* at 3:1–17. Mr. Chien's counsel stated that he would like to opportunity to amend and that he "would take [his] best shot at it," to which the Court responded, "Exactly, that's the key." *Id.* at 4:15–18. The Court expressly cautioned counsel as follows:

Well, I will give you one opportunity to [amend] and so you will want to do as much as you think you need to do consistent with Rule 11 ... What I don't want to have happen is a situation where you amend, I decide the ... motion to dismiss, I decide it adversely to you, I don't want you to then say, oh geez, Judge, I have a few more facts to allege. . . .

*Id.* at 4:6–14. The Court then set a schedule for the filing of an amended complaint and denied the Motion to Dismiss without prejudice to renewal "following the filing of an amended complaint that will address to the extent possible, consistent with Rule 11, the alleged defects asserted in the motions to dismiss." Order Denying Motions to Dismiss Without Prejudice [doc. # 31].

Mr. Chien filed his Amended Complaint [doc. # 35] on January 4, 2008, and Defendants then renewed their Motion to Dismiss [doc. # 39]. The Court held oral argument on the Motion to Dismiss on July 8, 2008 at which time Mr. Chien was represented by counsel. However, several days later, Mr. Chien's counsel sought to withdraw, *see* Motion to Withdraw [doc. # 62], on the ground that "continued representation of the plaintiff will likely result in the violation of one or more of the Rules of Professional Responsibility, including Rules 3.1, 1.16 and 2.1." *See* Affidavit of Kenneth A. Votre to Withdraw [doc. # 63], ¶ 5. During an in-court conference with Mr. Chien and his counsel on July 11, the Court advised Mr. Chien about the dangers of representing himself in a complex matter such as this, but Mr. Chien stated that he wished to discharge his counsel and to represent himself *pro se*. Upon the filing of a *pro se* appearance, the Court granted Mr. Chien's counsel's motion to withdraw, *see* Order [doc. # 65], and heard further argument by Mr. Chien *pro se* in opposition to the Motion to Dismiss. During that argument, Mr. Chien appeared to be making claims beyond those alleged in his Amended Complaint. As a consequence, the Court informed Mr. Chien that the Court would decide the pending Motion to Dismiss on the basis of the allegations in the Amended Complaint and that if, after the Court's ruling, Mr. Chien wished to amend his complaint further, he could move the Court—upon a showing of good cause—to permit a further amendment, providing a copy of any proposed amended complaint along with his motion.

## II.

This Court has previously had an opportunity to explain the pleading requirements for securities fraud actions. *See Beary*, 520 F.Supp.2d at 362–65; *Collier*, 2005 WL 1949868, at *5. A complaint alleging securities fraud must meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Proce-

dure and the PSLRA. *See ATSI Communs., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir.2007); *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 168 (2d Cir.2000). Rule 9(b) requires all claims of fraud to be pleaded with particularity. The Second Circuit "has read Rule 9(b) to require that a complaint '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Rombach v. Chang,* 355 F.3d 164, 170 (2d Cir.2004) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)). Similarly, the PSLRA requires that

> any securities fraud complaint alleging misleading statements or omission[s] of material fact[s] must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."

*Rombach,* 355 F.3d at 170 (quoting 15 U.S.C. § 78u–4(b)(1)). As the Second Circuit emphasized in *Lentell v. Merrill Lynch & Co.,* "[a]ny fraud must be pled with particularity, but the rule is applied assiduously to securities fraud." 396 F.3d 161, 168 (2d Cir.2005) (citation omitted). "This Circuit's strict pleading requirements in securities-fraud cases were (essentially) codified in the Private Securities Litigation Reform Act of 1995. So no claim should be filed unless and until it can be supported by specific factual allegations." *Id.* (citations omitted).

█ In *Lentell,* the Second Circuit also explained that in order to state a claim under Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5(b), securities fraud plaintiffs must plead with particularity that a defendant " '(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury.'" *Lentell,* 396 F.3d at 172 (quoting *In re IBM Corp. Sec. Litig.,* 163 F.3d 102, 106 (2d Cir.1998)). The last two requirements are typically referred to as "transaction causation" and "loss causation." *See Lentell,* 396 F.3d at 172–73. Transaction causation is "akin to reliance," *id.* at 172, and "[i]n the securities fraud context, transaction causation is presumed when a claim rests on a material omission." *Castellano v. Young & Rubicam, Inc.,* 257 F.3d 171, 186 (2d Cir.2001). By contrast, the Second Circuit has "described loss causation in terms of the tort-law concept of proximate cause, i.e., that the damages suffered by plaintiff must be a foreseeable consequence of any misrepresentation or material omission, but the tort analogy is imperfect." *Lentell,* 396 F.3d at 172–73 (citations and quotations omitted). Finally, the Supreme Court recently explained that in pleading scienter under the PSLRA, a plaintiff must plead facts giving rise to a "strong ... cogent and compelling" inference of scienter, taking into account plausible opposing inferences. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* —— U.S. ——, 127 S.Ct. 2499, 2510, 168 L.Ed.2d 179 (2007); *see also ATSI Communs., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir.2007).

In their Motion to Dismiss, Defendants essentially argue that Mr. Chien has failed to properly plead any of the required elements of a securities fraud action. There are, indeed, many defects in the allegations of the Amended Complaint, but two are most apparent and more than sufficient to support dismissal of the Amended Complaint.

## A.

The Amended Complaint is noticeably short on facts pleaded with particularity and long on general and conclusory allegations, a defect that would itself be a basis for dismissing the Amended Complaint.[4] *See Rombach,* 355 F.3d at 170 ("To meet the pleading standard of Rule 9(b), this Court has repeatedly required, among other things, that the pleading explain why the statements were fraudulent. The PSLRA imposes similar requirements to claims brought under the Exchange Act: the complaint shall specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." (citations and quotations omitted)). For instance, the Amended Complaint makes repeated allegations that CGPN's filings were "inaccurate and false," *see* Amended Compl. [doc. # 35] at 16, ¶ 33; *see also id.* at 20, ¶ 45, without specifying which statements Mr. Chien has in mind or why they were false. *See also* Amended Compl. [doc. # 35] at 15, ¶ 32 ("Many of the Company's false statements during the class period were made in 8–K's, 10–K's, and 10–Q's.").

However, to the extent that any aspect of the Amended Complaint is pleaded with particularity, it appears that the fraud theory propounded by Mr. Chien in the Amended Complaint is that Defendants purposely hid from the investing public, and Mr. Chien in particular, the fact that in connection with the reverse merger CGPN would issue large amounts of common stock, thereby increasing the number of issued and outstanding shares from approximately 177 million to 500,000,000, and that this alleged significant dilution of the company's common stock led to a sharp decrease in the price of the stock.[5] Thus, paragraph 37 and 38 asserts that he purchased shares and "retained those shares not expecting a dilution of his interest," and that the "value of his shares dropped once the devaluation was disclosed." Amended Compl. [doc. # 35] at 16, ¶¶ 37, 38. Paragraph 39 claims that CGPN did not "admit the existence of the granted 316,461,335 shares of common stock," which increased the issued and outstanding shares from approximately 177 million to 500,000,000. *Id.* at 17, ¶ 39. Paragraph 46 alleges that on November 7, 2005, CGPN "diluted the publicly traded interest in the Company significantly," and that the "dilution was not reported on any filed SEC Filings despite filings being made." *Id.* at 22, ¶ 46. Paragraph 55 claims that Defendants carried out a scheme to deceive the public regarding the fact that the company would "severely dilute the stock of common shares." *Id.* at 23, ¶ 55. Indeed, at oral argument on the motion, Mr. Chien's then-counsel acknowledged that the theory of fraud in the Complaint is that Defendants did not disclose the fact that CGPN's issued and outstanding stock would increase from approximately 177 millions to 500,000,000 shares.

The fundamental problem with this fraud theory is that the SEC filings show

---

4. Even though Mr. Chien was given an opportunity to amend his complaint and also given notice of the inadequacies of his original complaint, the Amended Complaint contains few specifics and principally adds only adjectives and some general allegations, none of which comply with the particularity requirements of Rule 9(b) and the PSLRA.

5. The Court notes that the Amended Complaint never explains why or how the issuance of the additional shares of common stock caused "dilution," given the fact that the stock was issued to discharge ostensibly valid debts owed to Defendants that were carried on CGPN's books. However, for the purposes of the Motion to Dismiss, the Court will assume as alleged in the Amended Complaint that the issuance of the stock resulted in dilution.

that the issuance of additional new shares was not withheld from Mr. Chien or the investing public.[6] For one, the press release announcing the transaction noted that it would be accomplished through issuance of new shares. While the press release itself did not give details on the transaction, the Form 8–K timely filed four business days later attached a copy of the Share Exchange Agreement. That agreement, as Mr. Chien acknowledges, *see* Amended Compl. [doc. # 35] at 10, ¶ 9, fully disclosed that in connection with the transaction, the company would change the issued and outstanding shares from approximately 177 million to 500,000,000, and also that all material debt would be eliminated before the closing. It is true that the Form 8–K does not state to whom the shares would be issued and in what proportion, but the theory of fraud propounded in the Amended Complaint is not dependent on the recipient of the shares. Instead, it is focused on the *issuance* of the additional stock itself and it is undisputed that as of September 26, 2005, the investing public knew in a timely manner that in connection with the transaction, the number of issued and outstanding shares would increase to 500,000,000.[7] *Novak v. Kasaks*, 216 F.3d 300, 314 n. 1 (2d Cir. 2000) (holding that the critical question is "whether the facts alleged are sufficient to support a reasonable belief as to the misleading nature of the statement or omission").

At various points in his briefing, Mr. Chien claims that all of the company's disclosures before September 26, 2005 were inaccurate because they stated that the company had approximately 177 million shares issued and outstanding and the shareholdings of Messrs. Cramer, Lowe and Wassung were shown as substantially less than they were after issuance of the new shares. But those statements were true at the time made since the shares were not issued until November 7, 2005. Plaintiff also complains that the Defendants knew that there would be an "impending dilution of outstanding publicly held shares" long before the September 26, 2005 disclosure of the Share Exchange Agreement, and yet never disclosed it. *See* Plaintiff's Mem. of Law in Opp. To Renewed Mot. To Dismiss [doc. # 46] at 9. However, CGPN was under no duty to disclose the pendency of merger talks with Skystar until September 20, when an agreement was finally reached, unless insiders were trading on the information of the impending merger, the merger talks made other statements false or misleading, or disclosure was required under other

---

**6.** In their Request for Judicial Notice [doc. # 25], Defendants attached a number of internet postings in September 2005 by an individual identified as "andrewchien." These postings discuss the fact that the company's common stock would be "diluted" (the word used in the postings) and that the company would be "generous to Cramer, etc. because he and other BODs also lost money." The postings also discuss CGPN's Form 8–K of September 26, 2005. The Court declined to consider these internet postings for purposes of the Motion to Dismiss, but the Court indicated that it would consider the postings (which Mr. Chien admitted on the record were his postings) if Defendants sought sanctions under the PSLRA.

**7.** Paragraph 39 curiously complains that the company's Form 10Q issued in December 2005 reported that *for the period ended September 30, 2005*, the company had issued and outstanding shares of approximately 177 million. But that statement is indisputably correct, since the additional shares, first reported in the September 26 Form 8K, were not issued until November 7, 2005. Moreover, the company filed a Form 8K dated November 14, 2005 that reported that it had issued additional shares and that the issued and outstanding shares now totaled 500 million.

SEC rules—none of which is alleged in the Amended Complaint. *See, e.g., In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 267 (2d Cir.1993) ("[A] corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact. Rather, an omission is actionable under the securities laws only when the corporation is subject to a duty to disclose the omitted facts."); *Glazer v. Formica Corp.,* 964 F.2d 149, 156 (2d Cir. 1992) (finding that there was no duty to disclose merger talks and therefore no § 10(b) violation); *see also Basic Inc. v. Levinson,* 485 U.S. 224, 239, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988) ("To be actionable, of course, a statement must also be misleading. Silence, absent a duty to disclose, is not misleading under Rule 10b–5.").

█ At oral argument and particularly after the withdrawal of his counsel, Mr. Chien also argued that the company committed fraud by not telling shareholders before the November 14, 2005 Form 8–K which individuals would receive the newly issued shares and for what price.[8] He appears to complain that the shares were issued for less than adequate consideration and/or were issued improperly without an allegedly required vote by shareholders. Such allegations may or may not state a cause of action for securities fraud, but there can be no doubt that these claims are not alleged with particularity in the Amended Complaint. Mr. Chien was represented by counsel at the time of the Amended Complaint and his counsel was well aware of Defendants' assertion that Mr. Chien's original complaint did not adequately plead fraud. Yet, when it came to the Amended Complaint, Mr. Chien alleged a claim of fraud based upon the issuance of additional shares of common stock, the same fraud theory that was asserted in the original complaint. That claim—the only claim pleaded with any semblance of the particularity required by Rule 9(b) and the PSLRA—is simply not borne out by the SEC filings on which it is based.

**B.**

█ Even if Mr. Chien had pleaded fraud with sufficient particularity under Rule 9(b) and the PSLRA, his Amended Complaint fails adequately to plead loss causation. To establish loss causation, "a plaintiff must allege ... that the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered, *i.e.,* that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security. Otherwise, the loss in question was not foreseeable." *Lentell,* 396 F.3d at 173; *see also Dura Pharmaceuticals, Inc. v. Broudo,* 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005) (A plaintiff in a securities fraud action must provide the defendant "with notice of what the relevant economic loss might be [and] of what the causal connection might be between that loss and the [alleged] misrepresentations.").

In his Amended Complaint, Mr. Chien does not say precisely when he purchased his shares or if he has ever sold them. In the section of his Amended Complaint labeled "Loss Causation," he merely says that he "purchased 6,391,700 shares of common stock, which he thought would be valuable because the company misrepre-

---

**8.** Paragraph 40 of the Amended Complaint does complain that with the issuance of the additional shares Messrs. Cramer, Lowe and Wassung "controlled the Company instead of managing the Company." But the Share Exchange Agreement made public on September 26 disclosed that Messrs. Cramer, Lowe and Wassung controlled "at least a majority" of CGPN's shares.

sented the amount of common stock as 177,188,665." Amended Compl. [doc. # 35] at 23, ¶ 50. And he states that his damages total $52,766.77, *id.* at 23, ¶ 52, although he fails to explain how he arrived at this figure. In paragraph 5 at page 8 of his Amended Complaint he also says that he purchased his CGPN shares from the "end of September 2005 to November 4, 2005," and that the severe dilution of the shares "caused the stock price to drop 65%." *Id.* at 8, ¶ 5.[9]

■ The allegations of the Amended Complaint are simply not sufficient. It is entirely unclear from the Amended Complaint when Mr. Chien suffered his alleged loss of $57,766.77, let alone whether the loss was causally related to the disclosure that the company would be issuing additional shares. As noted above, CGPN disclosed as of September 26 that at the closing 500,000,000 shares would be issued and outstanding, rather than the approximately 177 million that had previously been issued. According to the stock quotations provided in Defendants' Request for Judicial Notice, the company's stock price increased substantially from the date of that announcement through November 4, 2005. On September 20, the stock was trading at approximately $1.50 per share. On September 26, the stock was trading at about $2.39 per share and as of November 4, the share price was about $4.50.[10] *See*

Request for Judicial Notice, Exs. C–F. If, as Mr. Chien alleges, the disclosure of the issuance of additional shares led to his losses, one would have expected the share price to drop following the September 26 disclosure, not increase. Moreover, as Mr. Chien's counsel acknowledged at oral argument, by the November 14 Form 8–K, Mr. Chien and the public knew full well not only that additional shares were issued, but also that they were issued to Messrs. Cramer, Lowe and Wassung. Yet on November 19, 2005, after the November 14 Form 8–K had again disclosed the issuance of additional shares of common stock and had also disclosed that Messrs. Cramer, Lowe and Wassung were the recipients of the new shares, the stock's price remained at approximately $4.00 per share. It is true that later in 2005, the stock price began to decline, but it then rebounded in mid-January and February 2006 back to about $4.00 per share.[11]

There certainly is nothing about the performance of the share price in the wake of the company's disclosures that would demonstrate or even suggest any causal connection whatsoever between the alleged misstatements or omissions and the harm actually suffered by Mr. Chien (assuming that he suffered any harm, since we do not know from the Amended Complaint when or if he ever sold his shares). *See Lentell*, 396 F.3d at 174; *Collier*, 2005 WL

---

9. Given the fact that Mr. Chien ceased buying CGPN stock as of November 4, 2005, any alleged misstatements in the company's November 14 and December 1, 2005 filings are not actionable. *See Gurary v. Winehouse*, 235 F.3d 792, 799 (2d Cir.2000) (purchases occurring before an alleged deception are not "in connection with the purchase and sale of a security" as required for a claim under § 10 or Rule 10b–5). Those misstatements obviously could not have induced Mr. Chien to purchase any securities; nor could he have relied upon them in connection with his earlier purchases.

10. In February 2006, CGPN effected a 397 to 1 stock split and all stock prices are adjusted to reflect the stock split.

11. In the "Additional Factual Background" in his sur-reply, Mr. Chien alleges that the stock price "gradually dropped sharply." Pl.'s Sur–Reply [doc. # 56] at 2. According to the stock quotations, however, the stock dropped neither gradually nor sharply until many months after the merger occurred and even then, the stock price remained above where it was before the merger.

1949868, at *11. As the Supreme Court explained in *Dura Pharmaceuticals,* "[w]hen the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions or other events which taken separately or together account for some or all of that lower price." 544 U.S. at 342–343, 125 S.Ct. 1627. This is particularly true with a stock such as CGPN's that is so thinly traded. That is why the Second Circuit has cautioned that "it is not enough to allege that a defendant's misrepresentations and omissions induced a purchase-time value disparity between the price paid for a security and its true investment quality." *Lentell,* 396 F.3d at 174 (quotations omitted). Yet, despite the opportunity to amend his complaint to address the issue of loss causation, Mr. Chien still has not plead facts sufficiently to show the necessary linkage between his alleged loss and the failure to disclose the issuance of additional shares that forms the basis of his Amended Complaint.

Apparently concerned about his failure to plead loss causation, Mr. Chien's counsel filed a sur-reply brief before argument in which he provided "Additional Factual Background." *See* Plaintiff's Sur–Reply to Defendants' Reply to Plaintiff's Mem. In Opposition to Mot. To Dismiss [doc. # 56] ("Plaintiff's Sur–Reply"). In the sur-reply, counsel states that Mr. Chien began to purchase shares on September 21, 2005, the day after the press release announcing the Skystar merger, and that he ceased to acquire shares as of November 4, 2005, several days before the closing. He also alleges that he purchased his shares at an average price of $5.00, though he does not say how he arrived at that figure. Even in his sur-reply, however, Mr. Chien persisted in failing to state whether he had sold any of his shares or when. At oral argument on July 9, Mr. Chien's counsel acknowledged that Mr. Chien had sold a small portion of his holdings in mid-October 2005 [12] and that as of the oral argument he still owned the rest of the shares. In connection with his counsel's motion to withdraw, Mr. Chien represented to the Court that he sold all of his shares the day after the oral argument, July 9, for an average price of approximately $2 per share, which is higher than the approximately $1.50 price for the shares before the merger was announced on September 20.

■ The Court declines to consider the new facts alleged in the sur-reply and by Mr. Chien at oral argument for the simple reason that they are not alleged in the Amended Complaint, and Mr. Chien has never sought to amend his complaint to add those facts. To be candid, however, the Court is singularly unimpressed by these new facts, particularly Mr. Chien's allegation of a loss on his recent sale of stock. *See Dura Pharmaceuticals,* 544 U.S. at 342, 125 S.Ct. 1627 ("Other things being equal, the longer the time between purchase and sale, the more likely that . . . other factors caused the loss."); *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 769–72 (2d Cir.1994) (same). The new facts certainly do nothing to undermine the Court's conclusion based on the facts pleaded in the Amended Complaint that Mr. Chien has failed to allege facts showing that the alleged misstate-

12. Mr. Chien's counsel acknowledged at oral argument that he could not establish loss causation for his client's October 2005 sales because under his theory, no one knew at that point that the additional shares would be issued to Messrs. Cramer, Lowe and Wassung; according to Mr. Chien, that fact was not disclosed until the November 14 Form 8–K.

ments or omissions by CGPN "concealed something from the market that, when disclosed, negatively affected the value of the security." *Lentell,* 396 F.3d at 173.

### III.

■ Mr. Chien also asserts a claim against the individual Defendants under § 20(a) of the Exchange Act for "controlling-person liability." 15 U.S.C. § 78t(a). In order to state a cause of action under § 20(a), a plaintiff must plead, among other things, a primary violation by a controlled person. *See Boguslavsky v. Kaplan,* 159 F.3d 715, 720 (2d Cir.1998); *Collier,* 2005 WL 1949868, at *17. The Court has already held that Mr. Chien's primary § 10(b) and Rule 10b–5 claims are inadequately pleaded and must be dismissed. Accordingly, the Court dismisses Mr. Chien's secondary § 20(a) claim.

### IV.

Because the Amended Complaint does not adequately plead fraud or loss causation, the Court GRANTS Defendants' Motion to Dismiss the Amended Complaint [doc. # 39] and all claims against all Defendants are dismissed. If Defendants intend to seek sanctions under the PSLRA, they must file a motion to that effect no later than **August 7, 2008.** If Mr. Chien would like the Court to consider whether it would allow any amendments to the Amended Complaint, he must file a motion to that effect no later than **August 7, 2008.** The motion should explain why the Court should permit another amendment of the complaint and should attached any proposed amended complaint.

IT IS SO ORDERED.