Jefferson W. KELLER, III, individually
and d/b/a Century 21 Jeff Keller
Realty, Plaintiff,

v.

GREATER AUGUSTA ASSOCIATION
OF REALTORS, INC., a Georgia
corporation, Defendant.

Civil Action No. CV 110–050.

United States District Court,
S.D. Georgia,
Augusta Division.

Jan. 12, 2011.

Robert A. Mullins, Mullins Law Firm,
PC, Augusta, GA, Plaintiff.

Thomas W. Tucker, Tucker, Everitt,
Long, Brewton & Lanier, PC, Augusta,
GA, Jack R. Bierig, Sidley & Austin, LLP,
Chicago, IL, for Defendant.

**1374**

## ORDER

J. RANDAL HALL, District Judge.

Presently before the Court in the captioned matter is Defendant Greater Augusta Association of Realtors, Inc.'s ("GAAR") motion to dismiss the entirety of Plaintiff's complaint. Upon consideration of the complaint, the parties' briefs, and the relevant law, the motion to dismiss is **GRANTED.**

## I. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff Jefferson W. Keller III is a licensed real estate agent and owner of Century 21 Jeff Keller Realty. (Compl. ¶¶ 1–2.) Keller and his business (collectively referred to herein as "Keller" or "Plaintiff") are members of Defendant Greater Augusta Association of Realtors, Inc. ("GAAR"), a non-profit corporation. (*Id.*) The GAAR, in turn, is a member of the National Association of Realtors ("NAR"), which is a self-regulatory organization for real estate brokerage.[1] (*Id.* ¶¶ 7–8.) The GAAR is governed by the NAR's Code of Ethics and Standards of Practice. (*Id.* ¶ 10.)

The NAR governs Multiple Listing Services ("MLS"), which are regional or local databases in which real estate brokers may exchange listing information about property for sale. Through the MLS, brokers representing potential buyers are able to view the listings and may cooperate with the listing broker to facilitate a sale. (*Id.* ¶¶ 12–14.) Historically, the brokers would search the MLS and provide copies of relevant listings to potential buyers by hand delivery, mail, fax or e-mail. As the Internet became more prominent, some brokers began to offer Virtual Office Websites ("VOWs")—an online version of a

broker's "brick and mortar" office. Once potential buyers register with a broker through the broker's VOW, the buyers can search MLS listings online on their own. (Compl., Ex. D at 5–6.) As a real estate agent, Keller submits listings of property available for sale to the MLS operated by GAAR. These listings (along with listings from other brokers) may be viewed on the Internet by potential buyers through VOWs. (*See* Compl. ¶¶ 15–16.)

GAAR has implemented Rules and Regulations promulgated by the NAR to govern the operation of MLSs. Section 4.5 of the Rules and Regulations, entitled "Advertising in the MLS," states that "[p]articipants shall not advertise in sections viewable to the public through the Associations MLS website, including but not limited to: photos, public remarks, directions, etc." (*Id.* ¶¶ 26–27.) On February 6, 2009, Plaintiff received notice that GAAR had fined Keller for violating Section 4.5 in that he had listed his name, website address and/or phone number in the "Public Remarks" or "Property Description" sections of certain MLS listings. (*Id.* & Ex. B.)

Plaintiff's complaint also contains allegations concerning an antitrust lawsuit brought against the NAR, specifically *United States v. National Association of Realtors*, CV 05–C–5140 (E.D.Ill. Sept. 8, 2005) (the "NAR litigation"). (Compl. ¶¶ 19–24.) In the NAR litigation, the United States Department of Justice challenged certain MLS rules that limited the display of data, the effect of which allegedly discriminated against and restrained competition from brokers who used VOWs as opposed to traditional "brick and mortar" brokers. (*Id.*, Ex. D.) The challenged policy allowed traditional brokers who provided a listing on an MLS to "opt out" and

---

1. The NAR is not a party to this litigation.

thereby keep the listing from being displayed on a competitor's VOW. (*Id.*)

The NAR litigation was settled and the Final Judgment was entered on November 18, 2008. (Compl., Ex. A.) The Final Judgment prohibits the NAR from adopting, maintaining, or enforcing any Rule, or entering into or enforcing any agreement or practice, that directly or indirectly

A. prohibits a Broker from using a VOW or prohibits, restricts, or impedes a Broker who uses a VOW from providing to Customers on its VOW all of the Listing Information that a Broker is permitted to Provide to Customers by hand, mail, facsimile, electronic mail, or any other methods of delivery;

B. unreasonably disadvantages or unreasonably discriminates against a Broker in the use of a VOW to Provide to Customers all of the Listing Information that a Broker is permitted to Provide to Customers by hand, mail, facsimile, electronic mail, or any other methods of delivery;

C. prohibits, restricts, or impedes the referral of Customers whose identities are obtained from a VOW by a Broker who uses a VOW to any other Person, or establishes the price of any such referral....

(*Id.* at 5.) The Final Judgment was accompanied by a Competitive Impact Statement as required by 15 U.S.C. § 16(b). (Compl., Ex. D.)

**B. Plaintiff's Complaint**

In his complaint, Plaintiff sets forth six Counts.[2] Count I alleges that Section 4.5 of GAAR's Rules and Regulations violates the Final Judgment and Competitive Impact Statement of the NAR litigation. Count VI seeks a declaratory-judgment to the effect that Section 4.5 violates the Final Judgment and Competitive Impact Statement of the NAR litigation. Count II alleges that GAAR's implementation and enforcement of Section 4.5 is a restraint of trade in violation of Section I of the Sherman Act, 15 U.S.C. § 1 *et seq.* Counts III and V set forth state law claims. Finally, Count VII seeks relief available under the Sherman Act, citing 15 U.S.C. § 15, and seeks punitive damages and attorney's fees under state law.

In its motion to dismiss, Defendant contends that Counts I and VI fail to state a claim because Plaintiff was not a party to the NAR litigation. It further contends that Count II (and that part of Count VII related to damages under the Sherman Act) should be dismissed because Plaintiff has not alleged facts demonstrating any anticompetitive effect from the challenged conduct. Finally, Defendant contends that this Court should decline to exercise supplemental jurisdiction over the state law claims (Counts III and V) and the claim for damages related thereto (Count VII).

In his responsive brief, Plaintiff concedes that he cannot state a claim for relief based upon Defendant's alleged violation of the Final Judgment and Competitive Impact Statement of the NAR litigation. Instead, Plaintiff simply states that the NAR Final Judgment is "persuasive authority supporting [his] claims." (Resp. in Opp'n to Def.'s Mot. to Dismiss, at 3.) Accordingly, the Sherman Act claim (Count II) and the state law claims (Counts III and V) are the only cognizable substantive claims set forth in the complaint.

---

**2.** Although the Counts are labeled "Count I" through "Count VII," there is no Count IV.

The Court will refer to the Counts as they are labeled in the complaint.

## II. LEGAL ANALYSIS

### A. Legal Standard on Motion to Dismiss

A motion to dismiss does not test whether the plaintiff will ultimately prevail on the merits of the case. Rather, it tests the legal sufficiency of the complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Therefore, the court must accept as true all facts alleged in the complaint and construe all reasonable inferences in the light most favorable to the plaintiff. *See Hoffman–Pugh v. Ramsey*, 312 F.3d 1222, 1225 (11th Cir.2002).

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), the Supreme Court clarified the standard of pleading that a plaintiff must meet in order to survive a motion to dismiss under Rule 12(b)(6). The Court stated that, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955 (internal citations and punctuation omitted).

The Court further stated that while there was no "probability requirement at the pleading stage," *id.* at 556, 127 S.Ct. 1955, "something beyond ... mere possibility ... must be alleged," *id.* at 557–58, 127 S.Ct. 1955 (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005)). Therefore, "[f]actual allegations [in a complaint] must be enough to raise a right to relief above the speculative level," *id.* at 555, 127 S.Ct. 1955, and sufficient "to state a claim for relief that is plausible on its face," *id.* at 570, 127 S.Ct. 1955.

In *Ashcroft v. Iqbal*, 556 U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court clarified the concept of "plausibility," explaining that a claim has "facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (emphasis added) (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). Stated another way, a complaint must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 1949 (cited sources omitted).

In further clarifying the *Twombly* standard, the *Iqbal* Court explained that while a court must assume all factual allegations of the complaint are true, this assumption is inapplicable to legal conclusions. *Id.* at 1950. Accordingly, in evaluating a motion to dismiss, a court may disregard allegations in the complaint that are merely legal conclusions and, where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id., cited in American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir.2010) (explaining that the *Iqbal* Court adopted this "two-pronged approach" for consideration of a motion to dismiss).

### B. Sherman Act Claim

Plaintiff claims that GAAR's implementation and enforcement of Section 4.5 of its Rules and Regulations violate Section One of the Sherman Act. As the Eleventh Circuit has described, the Sherman Act "remains the basic cornerstone of antitrust law." *Spanish Broad. Sys. of Fla., Inc. v. Clear Channel Commc'ns, Inc.*, 376 F.3d 1065, 1069 (11th Cir.2004). Section One of

the Sherman Act, which is at issue in this case, makes unlawful "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce...." 15 U.S.C. § 1. Section Two prohibits monopolization, attempted monopolization and conspiracy to monopolize. 15 U.S.C. § 2. "Critically, under both sections, an antitrust plaintiff must show harm to competition in general, rather than merely damage to an individual competitor." *Spanish Broad. Sys.*, 376 F.3d at 1069. This is the element that Defendant herein contends is insufficiently pled in Plaintiff's complaint.

■ The Court agrees with Defendant that the complaint fails to allege anticompetitive harm to the market. An alleged restraint of trade is evaluated under a flexible, case-by-case standard called the "rule of reason." [3] *Jacobs v. Tempur–Pedic Int'l, Inc.*, 626 F.3d 1327, 1333–35 (11th Cir.2010) (citing *Standard Oil Co. v. United States*, 221 U.S. 1, 58–62, 31 S.Ct. 502, 55 L.Ed. 619 (1911)). In explaining the rule of reason, the Eleventh Circuit has stated that the "test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." *Levine v. Central Florida Medical Affiliates, Inc.*, 72 F.3d 1538, 1551 (11th Cir. 1996) (quoted source omitted). Thus, to establish a violation under the rule of reason, a plaintiff must show (1) an anticompetitive effect of the defendant's challenged conduct on the relevant market, and (2) that the conduct has no pro-competitive benefit or justification. *Id.*

■ In the instant case, Defendant contends that Plaintiff has failed to plead facts tending to show that Section 4.5 of GAAR's Rules and Regulations is harmful to the competition. To prove an anticompetitive effect on the market, a plaintiff must either prove that the challenged conduct had an "actual detrimental effect" on competition or that the conduct had "the potential for genuine adverse effects on competition." *Id.* The operative fact to show a Sherman Act violation is that "competition" was harmed. *See Spanish Broad. Sys.*, 376 F.3d at 1071.

In consideration of the instant complaint, this Court must first determine the relevant market that has allegedly been harmed. Plaintiff alleges that Rule 4.5 "suppresses competition from real estate Brokers *who use the Internet* to deliver real estate Brokerage services." (Compl. ¶ 39 (emphasis added).) It further alleges that Rule 4.5 "eliminate[s] real estate Brokers *who use the internet* to interact with customers in favor of more traditional Brokers." (*Id.* ¶ 40 (emphasis added).) Thus, it appears that Plaintiff alleges an anticompetitive effect on real estate brokers who utilize VOWs. Plaintiff, however, fails to assert facts tending to show injury to VOW brokers. For instance, Plaintiff has failed to allege any fact that reasonably suggests that the ability of a VOW broker to show listings to clients through the Internet is in any way affected by Rule 4.5 or that traditional brokers have a competitive advantage in showing their listings because of the implementation and enforcement of Rule 4.5.

**3.** A Section One claim may also be analyzed under the *per se* rule in that the challenged conduct has such pernicious anticompetitive effect, it is considered a *per se* violation of the Sherman Act, such as horizontal price fixing among competitors or group boycotts. *See*

*Jacobs*, 626 F.3d at 1333–35. Plaintiff has not alleged a *per se* category of trade restraint; thus, this Court will apply the rule of reason to determine whether the alleged restraint unreasonably limits competition.

■ The Court has culled through the complaint for facts tending to show an anticompetitive effect on the market. Plaintiff includes the following allegations:

- But for GAAR's unlawful conduct, competition within the market would result in more competition amongst Brokers and lower prices for consumers.

- GAAR Rules and Regulations are enforced with the intent to restrain trade and commerce, the purpose and effect of which was to unreasonably fix or raise fees and commissions for real estate Brokers and their agents in the real estate market served by GAAR and to direct business in that market to certain real estate Brokers and their agents at the expense of others.

- GAAR practices an unreasonable restraint on competition, the effects of which are anticompetitive.

- Keller is restrained in their ability to make his services available to the public and other Brokers. As a result, the public choice in the relevant market is artificially and improperly limited and there is a diminution in the quality of service offered to the public and other Brokers.

- The public, customers and other Brokers have been harmed as a result of the Defendant's anticompetitive conduct as described herein.

- Defendant and its officers willfully acquired or maintained its monopoly power in the market for real estate services in the Greater Augusta area by engaging in the ongoing anticompetitive, predatory and exclusionary acts acting on its own and through the leadership of GAAR.

(Compl. ¶¶ 40, 43–44, 48–50.) Yet, these are merely legal conclusions that do not factually allege *how* Rule 4.5 will affect the relevant market, i.e. VOW brokers. Indeed, the only allegations that arguably assert factual matter allege only that Plaintiff has been individually harmed:

- Keller has sustained losses and damages to their business and property in the form of lost commissions, sales and future business.

- Keller has experienced a significant decrease in revenues as a result of Defendant's wrongful conduct.

(*Id.* ¶¶ 41, 47.) Harm to an individual competitor will not suffice to state an antitrust violation. *Spanish Broad. Sys.*, 376 F.3d at 1069; *see also Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 458, 113 S.Ct. 884, 122 L.Ed.2d 247 (1993) ("[T]he purpose of the [Sherman] Act is not to protect businesses from the working of the market; it is to protect the public from the failure of the market."). The factual allegations in Plaintiff's complaint recount personal grievances about harm to his own business and not about the negative consequences to competition in the market. Thus, these allegations are insufficient to state a Sherman Act claim.

Moreover, the premise of Plaintiff's allegation, that the VOW brokers suffer greater harm than traditional brokers, fails for this reason. Rule 4.5 applies to all MLS listings, not just those that are accessed through a VOW as opposed to those that are printed out and hand-delivered, faxed or mailed. That is, prohibitions against the type and form of information that may be placed in a listing apply to all listings, not just VOW listings. The MLS is the MLS—whether it is accessed through the Internet or otherwise.

Finally, Plaintiff's contention that the NAR litigation provides support for his position that Rule 4.5 causes anticompetitive harm ignores a fundamental difference in the effect of the challenged MLS policies. In the NAR litigation, the chal-

lenged conduct allowed traditional brokers to "opt out" of allowing their listings to be published on a VOW website. In the instant case, Rule 4.5 does not operate to exclude a broker's listings from the MLS market; rather, it simply dictates the form and substance of the listings.

In response to the motion to dismiss, Plaintiff attempts to salvage his Sherman Act claim by explaining that the harm is actually to "smaller brokers" as opposed to VOW brokers. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss, at 4–5.) In particular, Plaintiff explains that "[l]arger brokers are able to fund more attractive VOW sites; thus when a consumer logs into one of these sites they are easily mislead [sic] into thinking that Keller's MLS Listings are those of the site's owner." (*Id.* at 4.) These assertions, however, bear no resemblance to the allegations in the complaint. In fact, Plaintiff cites to no factual allegations in the complaint that would support this new iteration of the alleged Sherman Act violation.

In conclusion, Plaintiff's complaint fails to allege an antitrust injury under the rule of reason. Accordingly, the Sherman Act claim must be dismissed.

### C. State Law Claims

■ Having dismissed the Sherman Act claim, the Court will exercise its discretion under 28 U.S.C. § 1367(c) and decline to exercise supplemental jurisdiction over Plaintiff's state law claims. "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988) (footnote omitted).

### III. CONCLUSION

Upon the foregoing, Defendant's motion to dismiss Plaintiff's complaint (doc. no. 10) is hereby **GRANTED**. Specifically, Counts I, II, IV and VII (to the extent it seeks damages under the Sherman Act) are **DISMISSED WITH PREJUDICE**. Plaintiff's state law claims, Counts III, V and VII (to the extent that it seeks damages pursuant to state law) are **DISMISSED WITHOUT PREJUDICE**. The Clerk is directed to **CLOSE** the case.