[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-12196
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-02317-SDM-MAP

MARGARET JAYNE KINNETT,
individually and on behalf of all others
similarly situated, et al.,

Plaintiffs,

OKLAHOMA FIREFIGHTERS PENSION AND
RETIREMENT SYSTEM,

Movant-Appellant,

versus

STRAYER EDUCATION, INC.,
ROBERT S. SILBERMAN,
MARK C. BROWN,
KARL MCDONNELL,

Defendants-Appellees.
_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(December 13, 2012)

Before HULL, MARCUS and MARTIN, Circuit Judges.

PER CURIAM:

Appellant Oklahoma Firefighters Pension and Retirement System appeals from the district court's final judgment in favor of Appellees Strayer Education, Inc., Robert S. Silberman, Mark C. Brown, and Karl McDonnell (collectively, "Strayer"). The district court, adopting in full the report and recommendation of the magistrate judge, dismissed Appellant's complaint, which alleged, on behalf of all persons who purchased Strayer common stock between November 1, 2007 and January 7, 2011, that Strayer had made false or misleading statements during that period concerning its recruitment and enrollment practices, in violation of sections 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a).[1]  On appeal, Appellant argues that the district court erred in concluding that Appellant had failed to satisfy all three elements of a securities fraud claim ((1) a false or misleading

---

[1] Section 10(b) of the Exchange Act provides:

> It shall be unlawful for any person, directly or indirectly, ... [t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Section 20(a) of the Exchange Act provides for liability of "controlling persons" who aid and abet "any person liable under any provision of this chapter or of any rule or regulation thereunder." 15 U.S.C. § 78t(a).

statement; (2) scienter; and (3) loss causation) and in dismissing the complaint. After careful review, we affirm.

We review a district court's order dismissing a complaint de novo. FindWhat Investor Group v. FindWhat.com, 658 F.3d 1282, 1295 (11th Cir. 2011). At the motion to dismiss stage, we accept all well-pleaded facts as true, and construe the reasonable inferences therefrom in the light most favorable to the plaintiff. Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006).

To state a claim under § 10(b), a plaintiff must allege:

(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss [i.e., damages]; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called "loss causation."

FindWhat, 658 F.3d at 1295 (quotation omitted; emphasis added); see Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005). Because all six elements are required in order to state a § 10(b) claim, and because we conclude that the element most starkly absent from Appellant's pleading was loss causation, that is the only one we address here.

The loss causation element requires that a defendant's fraud be both the but-for and proximate cause of a plaintiff's later losses. FindWhat, 658 F.3d at 1309; cf. Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 344-45 (2005) (noting the "common-law

roots of the securities fraud action" and basing its loss causation analysis on common-law tort causation).  Thus, the plaintiff must show that the defendant's fraud -- as opposed to some other factor -- proximately caused his claimed losses.  Dura, 544 U.S. at 342-43; FindWhat, 658 F.3d at 1309.  Further, a plaintiff may not establish loss causation by simply alleging a security was purchased at an artificially inflated price.  Dura, 544 U.S. at 342-43, 347.  However, the plaintiff need not show that the defendant's misconduct was the "sole and exclusive cause" of his injury; he need only show that the defendant's act was a "substantial" or "significant" contributing cause."  FindWhat, 658 F.3d at 1309; Robbins v. Koger Properties, Inc., 116 F.3d 1441, 1447 (11th Cir. 1997).

Appellant claims that as a result of Strayer's fraud concerning its recruitment and enrollment practices, new student enrollments decreased by 20%, which in turn lowered the stock price.  Appellant primarily focuses its loss-causation allegations on statements made in a question-and-answer session following a January 10, 2011, conference call that Strayer held with investors.  During this session, Strayer's CEO Silberman had the following exchange with analyst Amy Junker prior to trading on January 10, 2010:

> AMY JUNKER, ANALYST, ROBERT BAIRD: I'm hoping you can just touch a little bit on any additional color on why you think starts have degraded so much since last quarter.  Do you still believe that

4

negative press is kind of the only plausible explanation as you talked about last quarter?  Were you seeing any evidence that students have become perhaps more debt averse or any of the reasons that you're getting from the students themselves to indicate why this is happening?

ROBERT SILBERMAN:  Sure.  I mean Karl [McDonnell] is here, and he can comment as well.  I don't know of any specific set of concerns with regard to pricing or debt capacity.  Our new student enrollment was fairly consistent across all of our geographic regions in terms of the impact.  So I would -- there is nothing geographic that I would look at.

I do think that negative publicity and just a general sense of -- you have to bear in mind the difficulty that students go through in terms of deciding to go back to school, there is always a lot of reasons not to do it, and the negative publicity in the last four or five months certainly has had an impact.  We have also been I would admit somewhat distracted internally here over the last two or three months just in dealing with some of the ramifications of not just the publicity but the actual governmental activity.

Doc. 40 at 87, ¶ 199 (emphases added).  From this exchange, Appellant argues that Strayer admitted that a cause in the drop in new student starts was that it had been forced by the government to change its recruitment practices.  Further, says Appellant, Strayer admitted that its prior practices had been contrary to government guidelines -- and were not the passive recruitment tactics that Strayer had represented that it used to investors -- and that these improper practices led to decreased student enrollment, and thus, lower stock prices.

However, as the district court reasoned, these statements do not reveal that Strayer was admitting that it had engaged in improper recruitment and enrollment

5

practices, that those alleged improper practices either bolstered or were intended to bolster student enrollment numbers, that prior student enrollment numbers were the result of improper recruitment and enrollment practices, that Strayer implemented internal reforms as to the alleged improper practices, or that any reforms affected enrollment numbers. Indeed, Silberman said nothing about Strayer's recruitment practices during the relevant exchange. If anything, the statements indicate that dealing with governmental activity is a time-consuming task that distracts management attention from running the university, and that Strayer believed any decline in enrollment derived from the negative press surrounding the government activity with respect to the for-profit secondary education industry, not any changes in its recruitment or enrollment practices.

In short, the admission that Strayer's enrollments were effected by "governmental activity" does not reveal that Strayer's enrollment practices had not previously conformed with the government standards, as codified in the Higher Education Act or Strayer's internal code of ethics, or that Strayer modified its enrollment practices because of government scrutiny. Appellant argues that it is ambiguous what Silberman was referring to, and that this ambiguity should not be resolved against Appellant on a motion to dismiss. However, the Supreme Court has said that factual allegations in a complaint "must be enough to raise a right to relief

6

above the speculative level," Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 555 (2007), and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Moreover, specific to the situation at hand, the Supreme Court has expressly demanded a complaint to allege "something beyond the mere possibility of loss causation." Twombly, 550 U.S. at 557 (citing Dura, 544 U.S. at 347).

Here, without any explicit mention of Strayer's recruitment practices or even any change in any of its policies, it is simply not reasonable to infer that Silberman was somehow conceding that Strayer had engaged in improper recruiting or had been forced to change its recruiting practices to the detriment of its stock prices. As we've said, while ambiguities are construed in the light most favorable to the nonmovant, "unwarranted deductions of fact" are not admitted as true in a motion to dismiss. Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1246, 1248 (11th Cir. 2005) (quotation omitted). That is exactly what Appellant is urging the courts to do. Accordingly, since nothing in the statements corrects any prior disclosures by Strayer or reveals any omissions on Strayer's part that negatively affected the price of Strayer common stock, Appellant has failed to adequately allege loss causation. The district court did not err in dismissing Appellant's Section 10(b) claim.

7

Nor do we find any error in the district court's dismissal of Appellant's Section 20(a) claim.  To state a claim under § 20(a), the Appellant needed to allege that: (1) Strayer committed a primary violation of the securities laws; (2) the individual defendants possessed the power to control the general business affairs of Strayer; and (3) the individual defendants possessed the requisite power to directly or indirectly control or influence the specific corporate policy which resulted in the primary liability.  Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008). Because a primary violation of the securities laws constitutes an essential element of a § 20(a) derivative claim, a plaintiff adequately pleads a § 20(a) claim only where the plaintiff adequately pleads a primary violation. Id. As we've discussed, Appellant failed to adequately plead a violation of § 10(b), and therefore, Appellant failed to adequately plead a § 20(a) control-person claim.  See id. at 1255.

**AFFIRMED.**