12-4353-cv
Central States, S.E. & S.W. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of November, two thousand thirteen.

PRESENT:   JON O. NEWMAN,
           REENA RAGGI,
           GERARD E. LYNCH,
                *Circuit Judges*.
-----------------------------------------------------------------------
CENTRAL STATES, SOUTHEAST AND SOUTHWEST
AREAS PENSION FUND,
                *Plaintiff-Appellant*,

JINO KURIAKOSE, individually and on behalf of all others similarly situated, CITY OF AUSTIN POLICE RETIREMENT SYSTEM,
                *Plaintiffs,*
           v.                                           No. 12-4353-cv


FEDERAL HOME LOAN MORTGAGE
CORPORATION, RICHARD SYROM, PATRICIA L. COOK, ANTHONY S. PISZEL,
                *Defendants-Appellees,*

FEDERAL HOUSING FINANCE AGENCY,
                *Intervenor-Defendant-Appellee.*
-----------------------------------------------------------------------

1

APPEARING FOR APPELLANT:     DOUGLAS WILENS (David J. George, Robert J. Robbins, Robbins Geller Rudman & Dowd LLP, Boca Raton, Florida; Samuel H. Rudman, Robbins Geller Rudman & Dowd LLP, Melville, New York, *on the brief*), Robbins Geller Rudman & Dowd LLP, Boca Raton, Florida.

APPEARING FOR APPELLEES:     JORDAN D. HERSHMAN (Jason D. Frank, Bingham McCutchen LLP, Boston, Massachusetts; Kenneth I. Schacter, Bingham McCutchen LLP, New York, New York, *on the brief*), Bingham McCutchen LLP, Boston, Massachusetts, *for Defendant-Appellee Federal Home Loan Mortgage Corporation*.

JAMES K. GOLDFARB (Michael V. Rella, *on the brief*), Murphy & McGonigle, P.C., New York, New York, *for Defendant-Appellee Anthony S. Piszel*.

Thomas C. Green, Mark D. Hopson, Frank R. Volpe, Eric D. McArthur, Sidley Austin LLP, Washington D.C., *for Defendant-Appellee Richard Syron*.

Laura E. Neish, Zuckerman Spader LLP, New York, New York, *for Defendant-Appellee Patricia Cook*.

Howard N. Cayne, Arnold & Porter LLP, Washington, D.C., *for Intervenor Defendant-Appellee Federal Housing Finance Agency*.

2

Appeal from a judgment of the United States District Court for the Southern District of New York (John F. Keenan, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on September 27, 2012, is AFFIRMED.

Central States, Southeast and Southwest Areas Pension Fund ("Central States") is the court-appointed lead plaintiff representing a putative class of investors who purchased securities issued by the Federal Home Loan Mortgage Company ("Freddie") during the November 20, 2007 through September 7, 2008 class period.   Central States appeals from the dismissal of its second amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for securities fraud against Freddie and three of its former officers, Richard Syron, Anthony S. Piszel, and Patricia L. Cook, in violation of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, see 15 U.S.C. §§ 78j(b), 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, see 17 C.F.R. § 240.10b-5.   Central States also appeals from the district court's denial of leave to file a proposed third amended complaint.   We review the dismissal of Central States' second amended complaint de novo, see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007), and the denial of leave to amend for abuse of discretion, see id. at 108.   We assume the parties' familiarity with the facts and record of prior proceedings, which are set forth in detail in the district court's two prior decisions in this case, see Kuriakose v. Fed. Home Loan Mortg. Corp., No. 08 Civ. 7281(JFK), 2011 WL 1158028 (S.D.N.Y. March 30, 2011); Kuriakose

3

v. Fed. Home Loan Mortg. Corp., 897 F. Supp. 2d 168 (S.D.N.Y. 2012), and which we reference only as necessary to explain our decision to affirm.

1.    Motion to Dismiss

Central States argues that the district court erred in concluding that the dismissal was warranted because Central States' second amended complaint failed to plead the loss causation element of fraud, i.e., "a causal connection between the material misrepresentation and the loss." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 341–42 (2005); accord Lentell v. Merrill Lynch & Co., 396 F.3d 161, 172 (2d Cir. 2005); see 15 U.S.C. § 78u–4(b)(4).  On de novo review of the record, we agree with the district court.[1]

Central States' theory of loss causation rests on allegations that Freddie's stock price plummeted after defendants' statements that Freddie was adequately capitalized and had sufficient internal controls were revealed to be false through a series of third-party news articles and analyst reports beginning in July 2008 and ending with the announcement that Freddie was being placed into conservatorship on September 7, 2008. Central States also asserts that Freddie concealed or misrepresented its exposure to high risk subprime mortgage loans.  Central States further alleges that by refuting the negative characterizations in these partial disclosures and the negative statements in Treasury

---

[1] Because we conclude that Central States has failed adequately to plead loss causation with respect to the alleged material misstatements, we need not address its arguments challenging the district court's determination that it also failed adequately to plead the materiality and scienter elements of securities fraud.  See Lattanzio v. Deloitte & Touche LLP, 476 F.3d 147, 156–57 (2d Cir. 2007).

Department press releases, defendants sent "[m]ixed messages" to the market, precluding the district court from concluding that "investors already knew the truth about Freddie's financial condition." Appellant's Br. 34.

To plead loss causation, a plaintiff must plausibly allege "that the <u>subject</u> of the fraudulent statement or omission was the cause of the actual loss suffered, <u>i.e.</u>, that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security." <u>Lentell v. Merrill Lynch & Co., Inc.</u>, 396 F.3d at 173 (emphasis in original; internal quotation marks omitted).[2] Where, as here, the plaintiff's stock purchases and losses coincided with a marketwide phenomenon—the housing bubble burst—"the prospect that the plaintiff's loss was caused by the fraud decreases," and therefore the plaintiff must plead facts sufficient to show "that its loss was caused by the alleged misstatements as opposed to intervening events." <u>Id.</u> at 175 (internal quotation marks omitted); <u>see</u> <u>Dura Pharm., Inc. v. Broudo</u>, 544 U.S. at 345 (explaining that § 10(b) provides cause of action "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause").

At the outset, we note that on November 20, 2007, the first day of the class period, Freddie reported a loss of more than $2 billion, causing its stock price to fall from $37.50 at

---

[2] Like the district court, we do not conclusively decide whether the applicable pleading standard for loss causation is that of Fed. R. Civ. P. 8 or the heightened standard of Rule 9(b) because Central States has failed to plead loss causation even under the more lenient Rule 8 standard.

the close of trading on November 19 to $26.74 at the close of trading on November 20. On the same date, Freddie issued a supplement to its 2006 Annual Report disclosing both its increased involvement in nontraditional mortgage markets and the "greater credit risks" from "increased delinquencies and credit losses" involving nontraditional mortgage products. Freddie Mac, Information Statement Supplement to the 2006 Information Statement and Annual Report to Stockholders, dated March 23, 2007, at 76 (Nov. 20, 2007), J.A. 789. As the housing bubble burst accelerated over the next year, Freddie's stock price declined 57% from $37.50 at the close of trading on November 19, 2007, to $15.92 on July 2, 2008, the day before Central States alleges that the truth about Freddie's true financial condition began to "leak[] out." SAC ¶ 248. Viewed in this context, Central States' pleadings do not plausibly allege that they were not on notice of the true gravity of Freddie's situation until corrective disclosures began to be published on July 3, 2008.

First, as the district court correctly noted, Freddie made extensive disclosures about its investments and internal controls throughout the class period. Thus, Central States had to allege that the third-party "corrective disclosures" revealed the falsity of Freddie's own statements and caused "the decline in stock value that plaintiffs claim as their loss." Lentell v. Merrill Lynch & Co., Inc., 396 F.3d at 175 (emphasis in original). In fact, Central States does not identify how the alleged corrective disclosures "even purported to reveal some then-undisclosed fact with regard to the specific misrepresentations alleged in the complaint." In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d 501, 511 (2d Cir. 2010)

(emphasis added); see Katyle v. Penn. Nat'l Gaming Inc., 637 F.3d 462, 473 (4th Cir. 2011) ("Corrective disclosures must present facts to the market that are new, that is, publicly revealed for the first time"); FindWhat Investor Grp. V. FindWhat.com, 658 F.3d 1282, 1311 n.28 (11th Cir. 2011) (explaining that corrective disclosure "obviously must disclose new information"). At most, the cited third-party articles and reports expressed negative opinions about Freddie's solvency based on information that was already publicly available. Such disclosures are not "corrective" for the purpose of pleading loss causation. See In re Omnicom Grp., Inc. Sec. Litig., 597 F.3d at 512 ("A negative journalistic characterization of previously disclosed facts does not constitute a corrective disclosure of anything but the journalists' opinions."); cf. In re Merck & Co., Inc. Sec. Litig., 432 F.3d 261, 270–71 (3d Cir. 2005) (holding that Wall Street Journal's analysis of previously available information is not corrective disclosure).

Second, assuming that some articles contained "facts" that contradicted certain of defendants' statements, the second amended complaint would still fail to plead loss causation based on corrective disclosures because Central States had to allege that Freddie's "share price fell significantly after the truth became known." Dura Pharm., Inc. v. Broudo, 544 U.S. at 347 (emphasis added). The very first alleged "partial disclosure," a July 3, 2008 article in the Wall Street Journal, however, itself reports a 40% decline in Freddie's stock price before the article was published.[3] See SAC ¶ 248(a). According to

---

[3] Because Central States incorporated this article into the complaint by reference, we may properly consider even those portions of the article not quoted in the complaint. See ATSI

7

the article, this significant decline in the value of Freddie's shares was based on "concern among investors" about Freddie's delay in raising $5.5 billion in capital, which the article attributed to Freddie's publicly available balance sheet "lack[ing] a strong cushion" and Freddie's failure to "fully clear[] up" previously disclosed "'significant deficiencies' in its financial-reporting controls." Peter Eavis, "A Delay-of-Pain Penalty--- Freddie Mac Falls As Stock Issue Stalls," Wall St. J., July 3, 2008, at C14, J.A. 2219–20. An article reporting on the reasons for a previous decline in stock value based on the same underlying conduct Central States claims was being concealed cannot plausibly be said to be revealing this information to the market for the first time.

Indeed, throughout its complaint, Central States alleges that before July 2008, speculation about Freddie's insolvency based on inadequate capitalization and insufficient internal controls caused the stock price to fluctuate. See, e.g., SAC ¶ 219(a)–(c) (alleging that despite defendants' positive statements regarding 2007 Annual Report, "potential problems at Freddie Mac began being heavily discussed in the market, causing its common stock to drop" and citing to articles from this pre-July 2008 timeframe "speculating on the problems surrounding the Company" that resulted in corresponding decline in stock value); see also id. ¶¶ 190, 201, 216, 244, 247 (citing pre-July 2008 drops in stock price following negative reports about Freddie's financial condition despite defendants' positive statements). As a result, Central States does not plausibly allege a causal connection between the drop of the share price and the information revealed in the corrective

Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

disclosures.[4]  See In re Flag Telecom Holdings, Ltd. Sec. Litig., 574 F.3d 29, 36 (2d Cir. 2009) ("[T]o establish loss causation, Dura requires plaintiffs to disaggregate those losses caused by changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, from disclosures of the truth behind the alleged misstatements." (internal quotation marks omitted)); see also In re Merrill Lynch & Co. Research Reports Sec. Litig., 568 F. Supp. 2d 349, 364 (S.D.N.Y. 2008) (holding that plaintiff could not untangle losses from contemporaneous collapse of Internet sector when he failed to explain issuer's stock price decline in months before alleged materialization of risk concealed by the fraud); 60223 Trust v. Goldman Sachs & Co., 540 F. Supp. 2d 449, 461 (S.D.N.Y. 2007) (finding failure to plead loss causation where "loss in value of the stock occurred gradually over the course of the entire class period," despite continuation of misleading statements, and complaint did "not even refer to the phenomenon of the gradual loss of the stock's value, much less attempt to explain it as related to loss causation").

Third, Central States challenges the district court's reliance on Lentell, arguing that because defendants' manipulated the financial statements, it was not "unambiguously apparent" that Freddie was "grossly undercapitalized," and therefore investors could not have known that it was at risk of insolvency and conservatorship.   Appellant's Br. 34–35.

---

[4] Although the district court did not address this specific reason in finding that Central States failed adequately to plead loss causation, this Court may "affirm the district court's judgment on any ground appearing in the record, even if the ground is different from the one relied on by the district court."  ACEquip Ltd. v. Am. Eng'g Corp., 315 F.3d 151, 155 (2d Cir. 2003).

In support, Central States quotes from an August 16, 2008 article in Barron's that analyzed Freddie's balance sheet and concluded that (1) using the company's own reported fair-value figures for its assets, Freddie would have a negative net worth of $5.6 billion; (2) Freddie's calculation of its capital levels included deferred tax assets, which would be useless if Freddie had negative earnings; and (3) Freddie had boosted its capital ratios by making interest payments on failed mortgages rather than repurchasing them. Not only does this article fail to disclose any new facts, it does not even disclose a new opinion, as other publications had, several months prior, expressed similar opinions about Freddie's under capitalization. See Jonathan R. Laing, "The Next Government Bailout?", Barron's, March 10, 2008 at 21, J.A. 2199–202 (makes similar observations about Fannie Mae's financial statements and observing that Freddie also appears to be under-capitalized); see also SAC ¶ 219(b) (citing Barron's article from March 10, 2008). Moreover, Central States does not allege that the Barron's analysis was based on anything other than the application of the author's own analytical skill to data that Freddie had reported. Thus, even if under capitalization was not "unambiguously apparent" from Freddie's valuation of its assets and liabilities, cf. Lentell v. Merrill Lynch & Co., Inc., 396 F.3d at 177, we agree with the district court that "all relevant information was already available to investors" and, therefore, these third-party disclosures were not "corrective." Kuriakose v. Fed. Home Loan Mortg. Corp., 897 F. Supp. 2d at 177; cf. Lattanzio v. Deloitte & Touche LLP, 476 F.3d 147, 158 (2d Cir. 2007) (applying Lentell to claim against auditor for financial statements that were improperly prepared but contained risk warning, and concluding that

10

where it was "unambiguously apparent" that company was in need of desperate measures and faced risk of bankruptcy, plaintiff failed sufficiently to allege that misstatement proximately caused loss).

Furthermore, the two September 7, 2008 New York Times articles—one reporting the FHFA conservatorship and the other discussing likely reasons for the conservatorship—do not remedy the inadequacy of the second amended complaint. The fact of the conservatorship was obviously not a corrective disclosure of anything previously concealed. As for the discussion of reasons for the conservatorship, the principal reasons given—overstatement of capital cushion and questionable recognition of deferred tax assets—had been previously revealed to the market. Moreover, in discussing questions regarding Freddie's accounting practices, the Times noted, as the second amended complaint acknowledges, that the accounting decisions were "not necessarily in violation of accounting rules." SAC ¶ 292.

Finally, Central States fails to adequately plead a relationship between Freddie's subprime mortgage exposure and the corrective stock price drop. While Central States alleges that Freddie's misrepresentations regarding its subprime exposure contributed to its artificially inflated stock price, Central States fails to connect this subprime exposure, or any alleged misrepresentations regarding it, to the events that are alleged to have caused the relevant stock price decline. The alleged corrective stock price decline related to disclosures regarding the federal government's takeover of Freddie, and Central States does not connect this takeover to Freddie's subprime holdings, let alone to any

11

misrepresentations about that subject. As Freddie's alleged subprime misrepresentations are never connected to the disclosures responsible for the corrective stock price decline, the subprime exposure allegations are unavailing to plead loss causation.

In sum, because Central States has failed to meet the pleading requirements for loss causation, the district court correctly dismissed its second amended complaint for securities fraud.

2.      Motion to Amend

Central States contends that the district court improperly denied it leave to file the third amended complaint. We disagree. Central States concedes that the Non-Prosecution Agreement cited in the third amended complaint is not a loss-causing event, and otherwise fails to allege the existence of any corrective disclosures during the class period that Freddie's subprime exposure was vastly understated. Thus, we conclude that the district court did not abuse its discretion in denying leave to amend. See Acito v. IMCERA Grp., Inc., 47 F.3d 47, 55 (2d Cir. 1995) ("One good reason to deny leave to amend is when such leave would be futile.").

We have considered Central States' remaining arguments on appeal and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

                              FOR THE COURT:
                              CATHERINE O'HAGAN WOLFE, Clerk of Court