MARTIN, Circuit Judge,
concurring in judgment only:
I agree that we must affirm the District Court’s dismissal of the plaintiffs’ complaint for failure to plead loss causation. Under our binding precedent in Meyer v. Greene, 710 F.3d 1189 (11th Cir.2013), plaintiffs must be armed with proof of a misrepresentation in order to plead securities fraud. Applying that rule, these plaintiffs cannot satisfy the loss causation pleading requirements by showing that Health Management Associates’ stock price fell immediately after the disclosure of a whistle-blower complaint alleging Medicare fraud and the announcement of a government investigation into HMA’s Medicare billing practices because neither the complaint nor the investigation revealed actual wrongdoing. Id. at 1201 & n. 13.
I believe Meyer was wrongly decided. To require a conclusive finding of fraud at the pleadings stage imposes a prohibitive burden on plaintiffs and immunizes defendants who have successfully concealed their misconduct from the government. In my view, fully embracing Meyer’s logic would extinguish the ability of private actions to serve as an independent check on market integrity. Cf. Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 313, 127 S.Ct. 2499, 2504, 168 L.Ed.2d 179 (2007) (“This Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC).”). I write separately to explain why I believe that Meyer is contrary to Supreme Court precedent.
I.
As the majority opinion sets out, in order to state a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Securities and Exchange Commission Rule 10(b)-5, plaintiffs must allege the following six elements: (1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation.[1] *865 Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42, 125 S.Ct. 1627, 1631, 161 L.Ed.2d 577 (2005).
Loss causation is similar to the concept of proximate cause in tort. It requires that plaintiffs establish a causal link between a defendant’s misconduct and the economic loss that they have suffered. The Supreme Court most recently addressed the standards for both pleading and proving loss causation in Dura Pharmaceuticals, Inc. v. Broudo. Specifically, the Supreme Court reversed the Ninth Circuit’s holding that plaintiffs could satisfy the loss causation requirement simply by alleging, and subsequently proving, that they had purchased a security at an artificially inflated price. Dura, 544 U.S. at 342, 125 S.Ct. at 1631.
The Supreme Court explained that the Ninth Circuit’s standard was both illogical and inconsistent with the common-law roots of private securities fraud actions: at the moment that an investor purchases a security at an artificially inflated price, she has not yet suffered any loss. See id. Further, if the price of the security later falls for a reason wholly unrelated to the defendant’s misconduct (for example, a market-wide crash), the investor also cannot recover. Id. at 342-43, 125 S.Ct. at 1631-32. Instead, plaintiffs must “prove that the defendant’s misrepresentation (or other fraudulent conduct) proximately caused [their] economic loss.” Id. at 346, 125 S.Ct. at 1633.
After explaining what was required as a matter of proof, the Supreme Court next turned to the pleading requirements for loss causation. It first observed that, consistent with Federal Rule of Civil Procedure 8(a)(2), a complaint need only provide the defendant with “fair notice of what the plaintiffs claim is and the grounds upon which it rests.” Id. at. 346, 125 S.Ct. at 1634 (quotation marks omitted). Although the complaint in Dura was found to be insufficient because it stated only that the plaintiffs had suffered a loss by purchasing securities at artificially inflated prices, the Supreme Court suggested that the complaint would have been adequate had it stated that Dura’s stock price fell after the alleged misrepresentations had been exposed. Id. at 347, 125 S.Ct. at 1634. The Supreme Court ended its discussion by noting that the standard for pleading loss causation was a “simple test” and that “it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind.” Id. at 346-47, 125 S.Ct. at 1634.
Following Dura, we have held that plaintiffs can prove loss causation circumstantially, by:
(1) identifying a “corrective disclosure” (a release of information that reveals to the market the pertinent truth that was previously concealed or obscured by the company’s fraud); (2) showing that the stock price dropped soon after the corrective disclosure; and (3) eliminating other possible explanations for this price drop, so that the factfinder can infer that it is more probable than not that it was the corrective disclosure — as opposed to other possible depressive factors — that caused at least a “substantial” amount of the price drop.
FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1311-12 (11th Cir.2011).
Thus, the corrective disclosure mirrors the misrepresentation — just as the misrep *866 resentation artificially pushes the price of a stock up, the corrective disclosure removes “the fraud-induced inflation that was baked into the plaintiffs purchase price, thereby causing losses to the plaintiff.” Id. at 1311. Although Dura did not set forth any requirements about the quality, form, or precision of a corrective disclosure, we have held that “a corrective disclosure can come from any source, and can take any form from which the market can absorb the information and react.” Id. at 1312 n. 28 (alterations adopted and quotation omitted). Plaintiffs also do not need to prove that a single piece of information precisely and conclusively refuted the defendant’s misrepresentations. Instead, they may establish loss causation by showing that fraud was gradually revealed through a series of “partial disclosures.” Meyer, 710 F.3d at 1197 (quotation omitted); see also Dura, 544 U.S. at 342, 125 S.Ct. at 1631 (observing that the truth about a security’s value may “leak out” into the marketplace).
II.
With that background in mind, I turn to Mey'er v. Greene, our Court’s most recent attempt at defining loss causation’s pleading requirements. In Meyer, the plaintiffs alleged that a developer misrepresented the value of its real estate holdings. 710 F.3d at 1193. Under their loss causation theory, the true value of the developer’s stock was revealed through three partial disclosures, each of which caused the security’s price to decline: (1) a hedge fund analyst’s presentation which Used previously available information to conclude that the developer’s holdings were overvalued; (2) the developer’s disclosure of an informal SEC investigation into whether the developer had complied with federal securities laws; and (3) the developer’s disclosure of a formal SEC investigation into that same subject matter. Id. at 1197, 1201.
Relying primarily on past Eleventh Circuit precedent- that discussed what was needed to prove loss causation,[2] the panel concluded that the plaintiffs had failed to adequately plead loss causation. The panel rejected the argument that the hedge fund analyst’s presentation qualified as a corrective disclosure because the presentation simply “repackaged” already available data and therefore, did not reveal anything that had been previously concealed. Id. at 1199.
It also reasoned that the announcements of the government investigation could- not serve as corrective disclosures — even though the investigation concerned precisely the same subject matter as the alleged fraud and caused the developer’s stock price to fall — because the SEC had not yet issued a finding of wrongdoing. Id. at 1201. Thus, the investigation did not “reveal to the market that a company’s previous statements were false or fraudulent.” Id. The panel left open the possibility that the announcement of government investigations could potentially form the basis for a corrective disclosure, but only if there were a later finding of actual fraud. See id. n. 13 (“It may be possible, in a different case, for the disclosure of an SEC investigation to qualify as a partial corrective disclosure for purposes of opening the class period when the investigation is coupled with a later finding of fraud or wrongdoing.”).
*867 Meyer’s reasoning would have made good sense in evaluating whether the plaintiffs had met their burden of proof. It is clear that plaintiffs must prove the existence of a misrepresentation before their, losses become compensable. But holding plaintiffs to this standard at the pleadings stage is contrary to both precedent and logic.
Dura tells us that because pleading rules are “not meant to impose a great burden,” a plaintiff need only provide defendants with “some indication of the loss and the causal connection that the plaintiff has in mind.” 544 U.S. at 347, 125 S.Ct. at 1634. Meyer requires far more. By holding that plaintiffs must possess a conclusive finding of wrongdoing before even being able to plead securities fraud, we now force inquiry into plaintiffs’ proof at the pleadings stage. Cf. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007) (observing that a well-pleaded complaint may proceed even if “recovery is very remote and unlikely” (quotation marks omitted)).
Beyond these problems, Meyer’s suggestion that the initial announcement of an investigation could potentially serve as a corrective disclosure if coupled with a later government finding of wrongdoing, see 710 F.3d at 1201 & n. 13, evinces a fundamental misunderstanding of loss causation. The requirement for a corrective disclosure serves the purpose of ensuring that plaintiffs meet the traditional common-law requirement of proximate cause. Dura, 544 U.S. at 347, 125 S.Ct. at 1634. Consistent with this purpose, we have reasoned that if the price of a security falls soon after the release of new information, then courts can infer that this new information proximately caused economic loss. See FindWhat, 658 F.3d at 1311-12. What is important, then, is the market’s reaction to a purported corrective disclosure at the time that the disclosure was made. See Bricklayers & Trowel Trades Int’l Pension Fund v. Credit Suisse Sec. (USA) LLC, 752 F.3d 82, 86 (1st Cir.2014) (observing that an event study, which is a statistical analysis of the change in a security’s value in response to new information, is the “preferred” method for proving loss causation).
However, Meyer implies that this causal chain is somehow affected by the government’s later finding of actual fraud. This defies logic. A later finding cannot change how the market reacted to an announcement at an earlier time. The government’s finding of fraud goes instead to the plaintiffs ability to prove misrepresentation — an entirely different element of her claim.
Finally, by evaluating each of the three disclosures individually, Meyer failed to recognize that the plaintiffs in that case had pleaded a series of partial corrective disclosures through which the truth “beg[an] to leak out.” Dura, 544 U.S. at 342, 125 S.Ct. at 1631. Surely even if each disclosure standing alone was insufficient, the cumulative effect of the presentation and the announcements of the government investigations — all of which provided information about the defendant’s allegedly fraudulent accounting practices and resulted in a decline in the stock price — created a “plausible causal relationship” between the alleged fraud and the plaintiffs’ economic loss. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 258 (5th Cir.2009) (quotation marks omitted).
“To preclude [a] suit on the basis that there has been no previous actual disclosure of fraud ... misses the mark.” In re Gentiva Sec. Litig., 932 F.Supp.2d 352, 388 (E.D.N.Y.2013). Recognizing the prohibitive burden that the Meyer rule imposes, a number of other courts have rejected the argument that the announcement of a gov *868 ernment investigation into the same subject matter as the alleged fraud cannot be pled as a corrective disclosure. See, e.g., Pub. Emps. Ret. Sys.. of Miss., 769 F.3d 818, 324-25 (5th Cir.2014) (“To require, in all circumstances, a conclusive government finding of fraud merely to plead loss causation would effectively reward defendants who are able to successfully conceal their fraudulent activities by shielding them from civil suit.” (quotation omitted)); Gentiva, 932 F.Supp.2d at 387 (“After this review of the authorities, ultimately, the Court rejects the idea that the disclosure of an investigation, absent an actual revelation of fraud, is not a corrective disclosure.”); In re IMAX Sec. Litig., 587 F.Supp.2d 471, 485 (S.D.N.Y.2008) (holding that the announcement of an SEC investigation into the same subject matter as the alleged misrepresentations qualified as a corrective disclosure); Brumbaugh v. Wave Sys. Corp., 416 F.Supp.2d 239, 256 (D.Mass.2006) (same).
III.
The plaintiffs in this case allege that HMA artificially inflated its stock price by fraudulently overbilling Medicare. They have also alleged that they suffered economic loss because HMA’s stock price fell precipitously after the disclosure of a whistle-blower lawsuit describing Medicare fraud at HMA hospitals and a government investigation into the company’s Medicare billing practices. Taken together, these are precisely the allegations that Dura requires: the complaint provides both “notice of what the relevant economic loss might be” and “what the causal connection might be between that loss” and the alleged misrepresentations. 544 U.S. at 347, 125 S.Ct. at 1634. Although I recognize that my conclusion is foreclosed by Meyer, I believe that plaintiffs have met their burden at this very early stage.

. And as the majority opinion also makes clear, the pleading requirements for securities fraud lawsuits are stringent. In order to survive a motion to dismiss, a claim brought under Rule 10b-5 must satisfy (1) the federal notice pleading requirements, (2) the special *865 fraud pleading requirements provided by Federal Rule of Civil Procedure 9(b), and (3) the additional pleading requirements imposed by the Private Securities Litigation Reform Act (PSLRA).

. For example, in Hubbard v. BankAtlantic Bancorp, Inc., 688 F.3d 713 (11th Cir.2012), we considered an appeal following a motion for judgment as a matter of law following a jury trial, and in FindWhat Investor Group v. FindWhat.com, 658 F.3d 1282 (11th Cir.2011), we considered an appeal from the grant of a motion for summary judgment.