*13-0627-cv*
*Fjarde AP-Fonden v. Morgan Stanley*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

## SUMMARY ORDER

**Rulings by summary order do not have precedential effect.  Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1.  When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order").  A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 12th day of January, two thousand fifteen.

PRESENT:

JOSÉ A. CABRANES,
RICHARD C. WESLEY,
DEBRA ANN LIVINGSTON,

*Circuit Judges.*

_____

JOEL STRATTE-MCCLURE,

*Plaintiff*,

FJARDE AP-FONDEN,

*Plaintiff-Appellant*,

PLAINTIFF STATEBOSTON RETIREMENT SYSTEM,
STATE-BOSTON RETIREMENT SYSTEM,

*Movant-Appellant*,

-v.-                                                    No. 13-0627-cv

MORGAN STANLEY, a Delaware Corporation, JOHN J. MACK,
ZOE CRUZ, DAVID SIDWELL, THOMAS COLM KELLEHER, THOMAS V. DAULA,

*Defendants-Appellees*,

GARY G. LYNCH,

*Defendant.*

_____

David Kessler (Andrew L. Zivitz, Kimberly A. Justice, Richard A. Russo, Jr., Joshua A. Materese, *on the brief*) Kessler Topaz Meltzer & Check, LLP, Radnor, PA, *for Plaintiff-Appellant Fjarde AP-Fonden*.

JAVIER BLEICHMAR (Jonathan M. Plasse, Joseph A. Fonti, Wilson M. Meeks, *on the brief*), Labaton Sucharow LLP, New York, NY, *for Movant-Appellant State Boston Retirement System*.

ROBERT F. WISE, JR. (Charles S. Duggan, Andrew Ditchfield, *on the brief*), Davis Polk & Wardwell LLP, New York, NY, *for Defendants-Appellees*.

**UPON DUE CONSIDERATION**, it is hereby **ORDERED, ADJUDGED**, and **DECREED** that the order of the District Court is **AFFIRMED.**

State-Boston Retirement System and Fjarde AP-Fonden bring this putative securities fraud class action on behalf of themselves and other similarly situated investors ("Plaintiffs"), against Morgan Stanley, and six of its officers and former officers: John J. Mack, Zoe Cruz, David Sidwell, Thomas Colm Kelleher, and Thomas Daula ("Defendants"), pursuant to Sections 10(b), 15 U.S.C. § 78j(b), and 20(a), 15 U.S.C. § 78t(a), of the Securities and Exchange Act of 1934 (the "Exchange Act"). In orders dated April 4, 2011 and January 18, 2013, the United States District Court for the Southern District of New York (Batts, *J.*) granted Defendants' motions to dismiss. Plaintiffs timely appealed. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review. For the reasons stated here and in an opinion issued simultaneously

with this summary order, we affirm.[1]

                                         *     *     *

We review a district court's judgment granting a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) *de novo*, accepting all factual allegations in the complaint as true. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). In making this determination, we consider "public disclosure documents required by law to be, and that have been, filed with the SEC." *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). We may also consider "well-publicized stock prices." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 n.8 (2d Cir. 2000)

Section 10(b) of the Securities Exchange Act of 1934, makes it unlawful to "use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of [the] rules and regulations" that the SEC prescribes. 15 U.S.C. § 78j. SEC Rule 10b-5, which implements Section 10(b), prohibits "mak[ing] any untrue statement of a material fact or [omitting] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b-5(b). To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must allege that each defendant "(1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that

_____

[1] We decide Plaintiffs' claim that the Defendants violated Section 10(b) by omitting to disclose known trends required to be disclosed pursuant to Item 303 in a separate opinion issued simultaneously with this summary order. The remaining claims are resolved by this summary order.

3

the plaintiff's reliance was the proximate cause of its injury." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007) (citing *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005)).

Securities fraud claims are subject to heightened pleading requirements. A complaint alleging securities fraud must satisfy Rule 9(b), *Ganino*, 228 F.3d at 168, which requires that "the circumstances constituting fraud" be "state[d] with particularity," Fed. R. Civ. P. 9(b). A securities fraud complaint based on misstatements must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000) (internal quotation marks omitted). Allegations that are conclusory or unsupported by factual assertions are insufficient. *See Luce v. Edelstein,* 802 F.2d 49, 54 (2d Cir. 1986).

The gravamen of Plaintiffs' complaint is that Defendants made numerous material misstatements and omissions from June 20, 2007 through November 19, 2007 to conceal Morgan Stanley's exposure and losses associated with a subprime mortgage trade (the "proprietary trade," which included both a "long" and "short" position). Plaintiffs' second amended complaint identifies two categories of alleged misrepresentations and omissions made by Defendants: (1) misrepresentations and omissions regarding Morgan Stanley's exposure to subprime-related assets (the "exposure claim") and (2) misrepresentations regarding Morgan Stanley's subprime related losses (the "valuation claim"). We affirm the district court's dismissal of both claims.

**I. Exposure Claim**

We first conclude that the district court properly dismissed the exposure claim to the extent it was based on alleged misrepresentations because Plaintiffs did not adequately plead any material

4

misrepresentation.[2] Plaintiffs have identified four supposed material misstatements made by Morgan Stanley officers. The district court correctly held that none of the statements are actionable under Section 10(b). The complaint fails to "demonstrate with specificity why and how" the statements are misleading. *See Rombach v. Chang*, 355 F.3d 164, 170-74 (2d Cir. 2004). In particular, to the extent that Defendants used "cautionary language" we must "analyze the allegedly fraudulent materials in their entirety to determine whether a reasonable investor would have been misled." *Halperin v. eBanker USA.com, Inc.*, 295 F.3d 352, 357 (2d Cir. 2002).

*First*, Plaintiffs allege that Sidwell's June 20, 2007 statement on an earnings call — to the effect that "concerns early in the quarter [ending May 31, 2007] about whether issues in the sub-prime market were going to spread [had] dissipated" — was a material misrepresentation. J.A. 498. Read in context, it is clear that this statement did not fraudulently convey that the firm faced no subprime risk. Sidwell's statement was related to the affect of the subprime market on Morgan Stanley's broader market outlook, not the trading risk Morgan Stanley faced from the subprime market itself. Moreover, the complaint itself reveals that Sidwell explained that there were ongoing risks and weaknesses from the residential mortgage market. He specifically noted there was a "weakness in U.S. residential mortgage markets," J.A. 318, and that there was a 24 percent decline in credit products revenues due to "volatility in the mortgage markets," J.A. 315. Thus the district court correctly concluded that this was not a material misstatement.

*Second*, Plaintiffs allege that Sidwell's June 20, 2007 statement on an earnings call that Morgan Stanley "really did benefit" from conditions in the subprime market and "certainly did not

---

[2] The opinion issued simultaneously with this summary order concludes, as to the claim that Defendants violated Rule 10b-5 by failing to disclose known trends or uncertainties in its 10-Q filings (as required by Item 303), that the district court properly dismissed this claim on the ground that scienter was not adequately alleged.

lose money in this business" in the second quarter, was a material misrepresentation. J.A. 498-99. The district court correctly concluded that this was a true statement regarding past performance. Sidwell said nothing about future exposure to subprime, but asserted instead that as of the second quarter of 2007 Morgan Stanley did not lose money and in fact did benefit from the subprime market. Even assuming that this statement did imply — as Plaintiffs argue — that Morgan Stanley did not face significant future subprime liability, it still would not be actionable because the allegations only show that, at that time, Morgan Stanley had subprime trading risk, not that it had accrued losses. In sum, Plaintiffs have not plausibly pled how or why this statement was false.

*Third*, Plaintiffs allege that Kelleher's September 19, 2007 statement that Morgan Stanley "remain[ed] exposed to risk exposures through a number of instruments [including] CDOs" was false and misleading because it gave investors the impression that Morgan Stanley was only marginally exposed to the subprime market. J.A. 506-07. This statement was a purely factual recitation of some of the risks Morgan Stanley still faced — and it accurately and truthfully included CDO risk. Kelleher made clear that the risk was *not* minimal as he noted that Morgan Stanley was a "major market player" in the market with remaining exposure to "subprime[] CDOs" and that the company "may continue to see challenging market conditions in the months ahead." J.A. 1788. On the facts alleged, it is not plausible that this statement was a material misrepresentation.

*Fourth*, Plaintiffs allege that Kelleher's October 24, 2007 statement that he "[did] not see further write-downs to [Morgan Stanley's] carrying values over the near term" was false and misleading. J.A. 516. Plaintiffs failed to argue that this statement was a basis for their fraud claim in the district court and, in any event, the complaint does not provide the context necessary to show specifically why this statement was false or misleading. We therefore affirm the dismissal of this claim.

6

**II. Valuation Claim**

Plaintiffs allege in their valuation claim that Morgan Stanley failed properly to write down the true extent of the losses sustained by the long position and that when the true losses came to light, the company's stock price declined. We affirm the dismissal of the valuation claim because Plaintiffs failed to plead loss causation.

Loss causation requires plaintiffs to plead that the alleged "misstatement or omission is the 'proximate cause' of an investment loss." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005). In *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), the Supreme Court held that "an inflated purchase price will not itself constitute or proximately cause the relevant economic loss." *Id.* at 342. Even if a purchaser later sells at a lower price after a corrective disclosure is made, "that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events, which taken separately or together account for some or all of that lower price." *Id.* at 342-43. Thus to establish loss causation, "a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered," *Suez Equity Investors, L.P. v. Toronto–Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001), i.e., that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security. *See Lentell*, 396 F.3d at 173. To allege a corrective disclosure, a plaintiff must allege that the disclosure "reveal[ed] to the market the falsity of the prior [statement]." *Id.* at 175 n.4.

Plaintiffs here allege that various analysts made corrective disclosures including predictions that Morgan Stanley would report significant fourth quarter write-downs as a result of the decline

7

in the values of subprime CDOs. These analyst predictions were followed by a drop in Morgan Stanley's stock price. But the analyst reports did not disclose any "underlying circumstance that [was] concealed or misstated." *Id.* at 173. The analysts did not report that the losses were due to fraudulently concealed losses that actually occurred in the third quarter. Instead, the reports state simply that the write-downs were forthcoming. This, of course, could have been a result of the continued decline in the subprime market during the fourth quarter. Although Plaintiffs need not rule out all competing theories for the decline in stock price, their allegations must "show that [their] loss was caused by the alleged misstatements as opposed to intervening events." *Id.* at 174 (internal quotation marks omitted). Plaintiffs' allegations failed plausibly to allege that Morgan Stanley's drop in stock price was not caused by the intervening market deterioration throughout the financial services industry. For this reason, we affirm the dismissal of Plaintiffs' valuation claim for failure to plead loss causation.

We have reviewed Plaintiffs' remaining arguments and find them to be without merit. For the reasons stated here and the opinion issued simultaneously with this summary order, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8